# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-1743

ROSALIA A. FLORES, APPELLANT,

v.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided   March 8, 2006   )

*Rosalia A. Flores*, *pro se*.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Kerry J. Loring*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and DAVIS and SCHOELEN, *Judges*.

DAVIS, *Judge*:  The pro se appellant, Rosalia A. Flores, widow of veteran Bruno N. Flores, appeals a June 10, 2004, decision of the Board of Veterans' Appeals (Board or BVA) determining that she had forfeited her rights to VA dependency and indemnity compensation (DIC) benefits under 38 U.S.C. § 6103(a).  The appellant filed an informal brief and the Secretary filed a brief in this case. The appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the  Board decision.  For the reasons provided herein, the Court will affirm the June 10, 2004, Board decision.

## I. BACKGROUND

Bruno N. Flores had recognized active service in the Philippine Army from December 1941 until his death in May 1942.  In September 1955, the veteran's widow, Ms. Flores, filed a claim for DIC benefits "as an unmarried widow of the veteran."  Record (R.) at 65.  In December 1955, the

Manila, Philippines, Regional Office (RO) received a letter from the veteran's father stating that Ms. Flores had been remarried since 1944 to another man, Resurreccion Claveria. In response, the director of VA's Compensation and Pension (C&P) Service requested that the RO conduct a field investigation to determine whether Ms. Flores "may by reason of her conduct be held to have remarried." R. at 39. The RO conducted its investigation in April 1956, during which time Ms. Flores gave a sworn statement that her only ceremonial marriage was to the veteran, and that she had not remarried, had children with, or lived with Mr. Claveria or any other man since the death of the veteran. After reviewing the RO's field examiner's report and recommendation, the general counsel of VA's C&P Service issued a July 1956 memorandum opinion to the manager of the Veterans Benefits Office (VBO) in Washington, D.C., wherein the general counsel concluded: "Inasmuch as the credible evidence demonstrates that the claimant has continuously lived a chaste life as the unremarried widow of the [] veteran, she may be accepted as such for gratuity payment purposes." R. at 68.

In January 1989, the RO received an unsigned letter stating that Ms. Flores had married Mr. Claveria, and alleging that they had conceived nine children together. In June 1989, during a followup field examination, Ms. Flores again provided the RO with a sworn statement; this time, she informed VA that she "did not admit the truth" in 1956, that she had "lived together [with Mr. Claveria] in an open common law relationship" until his death in 1988, and that they had conceived nine children together. R. at 75-77. Additionally, the field examiner interviewed two of Ms. Flores' children, who confirmed that Ms. Flores and Mr. Claveria had been together since at least 1948 and that four of their nine children had been born before the date of her 1956 sworn testimony.

Based on these statements, in October 1989, the RO issued a proposed administrative decision finding sufficient evidence to "recommend that [Ms. Flores] be charged with possible violation of [the forfeiture statute]." R. at 88. That same month, the RO informed her of its proposed decision to charge her with violating the forfeiture statute, and informed her that she had 60 days to submit evidence and provide testimony before her case was submitted to the director of C&P Service for consideration. In response to the RO's letter, Ms. Flores' attorney asserted in a November 1989 letter that Ms. Flores had not remarried but that "she has children fathered by

2

Resurreccion Claveria," and that "their relationship was intermitte[nt] and that Resurreccion Claveria had long abandoned her even before the birth of her youngest child."  R. at 97.

In January 1999, the RO issued a memorandum wherein it noted that Ms. Flores had responded through her "alleged representative, but for unknown reasons, the case has not been monitored properly and no final administrative decision has been reached."  R. at 120.  The RO further noted that "[t]he claimant has been given more than enough time to respond to the charge letter of October 12, 1989.  To date she has not satisfactorily presented her contentions regarding the findings gathered during the field investigation conducted in June 1989."  R. at 121.  The memorandum concluded that a final administrative decision should be made by the RO, and that her claim should be submitted to the director of C&P Service for a decision.  In April 1999, the director of C&P Service determined that Ms. Flores "knowingly, intentionally, and deliberately" submitted fraudulent information about her cohabitation with Mr. Claveria in order to obtain VA benefits, thereby violating 38 U.S.C. § 6103(a).  R. at 130.

In a March 26, 2001, decision, the Board determined that the evidence established "beyond any reasonable doubt, that the appellant knowingly, intentionally, and deliberately presented false statements and information in order to obtain VA benefits in 1956."  R. at 191.  Ms. Flores appealed the decision to this Court, which, without addressing the merits of her claim, remanded the matter to provide her a hearing before the RO.  *See Flores v. Principi*, 18 Vet.App. 162 (2002) (table).  Upon remand, Ms. Flores was afforded the opportunity to submit additional evidence and testify at a personal hearing before the RO.  In its June 2004 decision on appeal, the Board again concluded that the appellant forfeited her rights to VA benefits under 38 U.S.C. § 6103(a).

## II.  CONTENTIONS ON APPEAL

The appellant filed an informal brief in which she argues for reversal on three grounds.  First, she argues that the Board wrongfully determined that she forfeited her benefits as a result of fraud. In support of her first argument, she asserts the following: (1) She did not have the requisite intent level under the statute because there was no evidence of specific intent to defraud, or, alternatively, her lack of education made it "impossible" to "concoct falsehoods"; and (2) VA wrongfully determined that she and Mr. Claveria had entered into a common law marriage because their

3

relationship was "illicit, intermittent and not open to the public," that she was never legally married to Mr. Claveria, and that he had been involved in adulterous affairs with other women. Appellant's (App.) Informal Brief (Br.) at 1-2. Second, the appellant argues that the Board erred in failing to apply 38 U.S.C. § 103(d), which provides for the restoring of benefits for surviving spouses, and that her DIC benefits should be restored as of the date of Mr. Claveria's death. Third, the appellant argues that the Board had no right to question the 1956 general counsel decision that she was eligible to receive DIC benefits.

In response, the Secretary asserts, inter alia, that the appellant's arguments are unsupported by the law and facts presented and, therefore, he requests that the Court affirm the Board's June 2004 decision. As to the merits of the Board's forfeiture decision, the Secretary first asserts that "in reviewing that, the Court can look only to whether the Board's finding is clearly erroneous." Secretary's Br. at 7. Moreover, the Secretary argues that there is a plausible basis in the record to support the Board's findings that Ms. Flores knowingly submitted false information to gain VA benefits. As to the appellant's jurisdictional argument, the Secretary asserts that "[t]here is no distinction with regard to the authority, and no basis in the law for the [g]eneral [c]ounsel's decision in this instance to overrule subsequent evidence and the [d]irector's decision." Secretary's Br. at 11. As to the appellant's section 103(d) argument, the Secretary contends that this argument has no merit because the Board's consideration under this matter "would be required only if [the a]ppellant's benefits had been discontinued based upon her lack of status as surviving spouse, because she held herself out to be married." Secretary's Br. at 11-12.

### III. ANALYSIS

#### A. Review of the Board's Findings Regarding Forfeiture

##### 1. *Forfeiture of VA Benefits under 38 U.S.C. § 6103(a)*

Section 6103(a) of title 38, U.S. Code, provides:

Whoever knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by the Secretary (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and

4

benefits under all laws administered by the Secretary (except laws pertaining to insurance benefits).

38 U.S.C. § 6103(a). "Fraud" is defined in VA's regulations as an "act committed when a person knowingly makes or causes to be made . . . a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any laws administered by [VA]." 38 C.F.R. § 3.901(a) (2005). This Court addressed the provisions of 38 U.S.C. § 6103(a) in *Trilles v. West*, wherein it stated that "[t]he language of section 6103 plainly states that a person who commits fraud in connection with his or her claim or award of benefits [] loses all rights, claims, and benefits." *Trilles*, 13 Vet.App. 314, 321 (2000) (en banc). The Court also noted that "section 6103(d)(1) authorizes forfeiture actions for acts occurring in the Philippine Islands after July 4, 1946, the date of Philippine independence from its previous status as a territory of the United States." *Id.* at 322; *see also* 38 U.S.C. § 6103(d)(1).

2. *VA's Authority to Bring Forfeiture Cases; and Appellate Review of Forfeiture Decisions*

Under his 38 U.S.C. § 512(a) statutory powers, the Secretary delegated authority to the director of C&P Service "to determine whether a claimant or payee has forfeited the right to gratuitous benefits or to remit a prior forfeiture pursuant to the provisions of 38 U.S.C. § 6103 or 6104." 38 C.F.R. § 3.100 (2005). Additionally, pursuant to 38 U.S.C. § 501(a), the Secretary prescribed regulations establishing adjudicative procedures for rendering forfeiture decisions. *See* 38 U.S.C. § 501(a) ("The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws.").

With regard to adjudication of forfeiture cases arising in the Philippines, where prosecution under the U.S. criminal code and attendant procedural rights for the accused could not be relied upon, the Secretary implemented the adjudication procedures set forth in 38 C.F.R. § 3.905 (2005) and supplemented by chapter 36 of VA's Adjudication Procedure Manual M21-1, part IV [hereinafter M21-1]. *See Trilles*, 13 Vet.App. at 318. Under these provisions, the Manila RO is authorized to conduct a preliminary adjudication of the alleged forfeiture. *See* 38 C.F.R. § 3.905(a). If the RO concludes that the evidence establishes forfeiture, the RO forwards the matter to the director of C&P Service, VA Central Office for a final determination. *See id.* ("Jurisdiction to determine whether the

claimant or payee has forfeited the right to gratuitous benefits or to remit a prior forfeiture is vested in the [d]irector, [C&P] Service, and personnel to whom authority has been delegated.").

In accordance with 38 C.F.R. § 3.905(b), a final forfeiture declaration shall not be made by the director of C&P Service until the RO has sent to the person affected a written notice containing the following: (1) The specific charges against the person; (2) a detailed statement of the evidence supporting the charges, subject to regulatory limitations on disclosure of information; (3) citation and discussion of the applicable statute; (4) notification of the right to submit a statement or evidence within 60 days, either to rebut the charges or to explain the person's position; and (5) notification of the right to a hearing within 60 days with representation by counsel of the person's own choosing, that fees for the representation are limited in accordance with 38 U.S.C. § 5904(c), and that no expenses incurred by a claimant, counsel, or witnesses will be paid by VA.  38 C.F.R. § 3.905(b).

The Board's jurisdiction and scope of authority is set forth in 38 U.S.C. § 7104(a), which provides:  "All questions in a matter which under section 511(a) of this title is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary.  Final decisions on such appeals shall be made by the Board."  38 U.S.C. § 7104(a).  Because a forfeiture determination affects the provision of VA benefits, the Board must hear appeals from a  person adversely affected by such decision. *Trilles*, 13 Vet.App. at 318-19; *id*. at 319 ("In forfeiture cases, as in claims for VA benefits, sections 511 and 7104 give the person adversely affected the right to appeal the forfeiture decision to the Board." (citation omitted)).  The Board is required to consider all evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (1991) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992).  Moreover, the Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented in the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court.  *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).  To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide

6

the reasons for its rejection of any such evidence. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert, supra.*

### 3. *Standard of Review*

Citing to 38 U.S.C. § 7261, the Secretary asserts in his brief that when reviewing the Board's forfeiture decision, "the Court can only look to whether the Board's finding is clearly erroneous." Secretary's Br. at 7. Although the Court notes the relevance of section 7261 to its review of forfeiture of benefits under section 6103(a), the Court is unaware of any decision of its own or the U.S. Court of Appeals for the Federal Circuit that sets forth the standard of review to be applied in this case. *See Trilles*, 13 Vet.App. at 325-27 (regarding the application of the new and material evidence requirement for reopening prior final forfeiture decisions); *Villaruz v. Brown*, 7 Vet.App. 561 (1995) (implying, without expressly holding, that the "clearly erroneous" standard of review is appropriate for review of the Board's determination regarding a reopened forfeiture decision); *Reyes v. Brown*, 7 Vet.App. 113, 115-16 (1994) (finding that no new and material evidence had been presented to reopen VA's prior forfeiture decision). Accordingly, before the Court can properly review the Board's determination that Ms. Flores' actions constituted fraud, thereby warranting forfeiture under 38 U.S.C. § 6103(a), we must decide, for the first time, the issue of the correct standard of review applicable here, a case involving a direct appeal from a Board forfeiture determination due to fraud under section 6103(a).

We begin our analysis with section 7261, which provides in relevant part:

> [This] Court . . . to the extent necessary to its decisions and when presented shall . . . in the case of findings of material fact made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside such findings if the finding is clearly erroneous.

38 U.S.C. § 7261(a)(4); *see also Gilbert*, 1 Vet.App. at 52 (noting that Congress intended this Court to review facts similarly to how a Federal appellate court reviews a district court's finding of facts under the "clearly erroneous" standard of Rule 52(a) of the Federal Rules of Civil Procedure). Under the "clearly erroneous" standard of review, the Court must set aside a finding of material fact when, after reviewing the record as a whole, it is "left with the definite and firm conviction that a mistake has been committed." *Gilbert*, 1 Vet.App. at 52 (quoting *United States v. U.S. Gypsum Co.*, 333

U.S. 364, 395 (1948)). When applying this standard, "'[i]f the [Board's] account of the evidence is plausible in light of the record viewed in its entirety, the [Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).

A plain reading of section 7261 makes clear that Congress did not make exceptions or purport to exclude certain categories of factual findings from the "clearly erroneous" standard of review. Indeed, the Supreme Court has warned against drawing such distinctions, particularly with regard to so-called "ultimate facts." *See Bose Corp. v. Consumers Union of United State*s, 466 U.S. 485, 501 (1984) ("Rule 52(a) applies to finding of facts, including those described as 'ultimate facts' because they may determine the outcome of litigation."); *see also* BLACK'S LAW DICTIONARY 612 (7th ed. 1999) (defining "ultimate fact" as "[a] fact essential to the claim or the defense"); *Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982) (noting that Rule 52(a) "does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous. It does not divide facts into categories; in particular it does not divide findings of fact into those that deal with 'ultimate' and those that deal with 'subsidiary' facts."); *but see Bose Corp.*, 466 U.S. at 501, n.16 (warning that "[f]inding so-called 'ultimate facts' more clearly implies the application of standards of law"); *id.* at n.17 ("Regarding certain largely factual questions in some areas of the law, the stakes–in terms of impact on future cases and future conduct–are too great to entrust them finally to the judgment of the trier of fact.").

With regard to fraud determinations resulting in forfeiture, we find no reason to stray from the general rule that findings of facts, even so-called "ultimate facts," should be reviewed under the "clearly erroneous" standard of review. Moreover, our caselaw has long recognized that findings with regard to fraudulent intent or bad faith are findings of fact and therefore, the province of VA. *See, e.g., Brown v. Brown,* 8 Vet.App. 40, 42 (1995) (holding Board's determination that veteran's conduct was fraudulent and prevented a waiver of indebtedness is a factual finding); *East v. Brown,* 8 Vet.App. 34, 40 (1995) (determining that the question of whether the debtor has acted in bad faith is a factual determination subject to review by this Court under a "clearly erroneous" standard); *Farless v. Derwinski*, 2 Vet.App. 555, 556 (1992) ("the question of whether the debtor was guilty of fraud is a factual determination subject to review by this Court under a 'clearly erroneous'

8

standard."); *see also Engelke v. Gober,* 10 Vet.App. 396, 399 (1997) (holding that the Court reviews the Board's determinations of whether a veteran's conduct constituted "good cause" under the "clearly erroneous" standard of review); *Struck v. Brown*, 9 Vet.App. 145, 153 (1996) (holding that the Board's determination that a veteran's conduct was fraudulent and prevented a waiver of indebtedness is a factual finding).

Practicality and proper judicial function further reinforce the appropriateness of this highly deferential standard of review. As the U.S. Supreme Court noted in *Miller v. Fenton*:

> Perhaps much of the difficulty in this area stems from the practical truth that the decision to label an issue a "question of law," a "question of fact," or a "mixed question of law and fact" is sometimes as much a matter of allocation as it is of analysis. At least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned upon a determination that, as a matter of the sound administration of justice, one judicial actor is better suited than another to decide the issue in question.

*Miller*, 474 U.S. 104, 113-14 (1985); *see also Pierce v. Underwood*, 487 U.S. 552, 558 (1988) (providing further support that a reviewing court must consider which judicial actor is better positioned to decide an issue).

Here, as a matter of the sound administration of justice, we find that VA and not the Court is best suited to decide this issue. VA is in a far better position than the Court to evaluate and to weigh the credibility of testimony and other evidence. *See Anderson*, 470 U.S. at 574 (noting that finding of intent is a factual matter whether the findings rest on determinations of credibility, review of physical or documentary evidence, or inferences from other facts); *see also Pullman-Standard*, 456 U.S. at 288 ("Treating issues of intent as factual matters for the trier of fact is commonplace."). Thus, not only is it more efficient to give deference to VA's factual findings because of VA's position and practice, such deference ensures that the process is also more accurate. *See Anderson*, 470 U.S. at 574 ("The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience on fulfilling that role comes experience."). Moreover, fraud determinations do not inherently implicate clearly ascertainable legal principles, and therefore, a highly deferential standard of review will not prevent the Court from fulfilling its primary purpose of bringing consistency and fairness to the VA benefits process. *See Cooter & Gell v. Hartmax*

*Corp.*, 496 U.S. 384, 405 (1990) ("Fact-bound resolutions cannot be made uniform through appellate review, de novo or otherwise."). Accordingly, the Court holds that the "clearly erroneous" standard of review is the proper standard of review for Board determinations of forfeiture under section 6103(a).

### 4. *Application of Law to Fact*

We begin our review of the Board's findings by first rejecting the appellant's argument that the Board had no right to question the 1956 general counsel decision that she was eligible to receive DIC benefits. In accordance with § 3.905(a) and the applicable provisions of the M21-1, in June 1989, the Manila RO conducted a preliminary investigation and concluded that there was sufficient evidence to forward the matter to the director of C&P Service for a forfeiture decision. That same month, the RO sent the appellant a letter that fully complied with the above-mentioned notice and process requirements under § 3.905 and subsequently submitted her case to the director of C&P Service for determination. Following the director of C&P Service's determination that forfeiture was warranted, the appellant appealed her claim to the Board. As we noted above, a forfeiture determination is a decision referred to in 38 U.S.C. § 511(a) and thus, under section 7104(a), the Board has the right to hear appeals from the person adversely affected. *See Trilles, supra*. Therefore, the Board had proper authority to decide the matters in this case.

As to the merits of the Board's decision, reviewing all the evidence of record, the Court is satisfied that the BVA had a plausible basis in the record for finding that Ms. Flores' actions constituted fraud and that forfeiture was therefore warranted under 38 U.S.C. § 6103(a). *See generally Trilles, supra*. In her June 1988 sworn statement, Ms. Flores knowingly and unambiguously informed VA that she had lied in April 1956 regarding her relationship with Mr. Claveria. There was also substantial evidence in the record, including statements made by the appellant and her children, for the Board to conclude that "[t]he appellant knowingly and intentionally submitted false and fraudulent statements regarding her relationship with [Mr. Claveria]." R. at 5. Accordingly, the BVA had a plausible basis in the record to conclude that the appellant had, with the requisite level of intent, committed fraud in connection with her claim for benefits, and, as a result, the June 2004 decision of the Board will be affirmed.

B. Ms. Flores' 38 U.S.C. § 103(d) Argument

The appellant asserts in her brief that the Board should have restored her DIC benefits upon the death of Mr. Claveria under 38 U.S.C. § 103(d)(3) because she is a "surviving spouse." Pursuant to 38 U.S.C. § 101(3), "surviving spouse" is defined as

> a person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse) and who has not remarried or (in cases not involving remarriage) has not since the death of the veteran, and after September 19, 1962, lived with another person and held himself or herself out openly to the public to be the spouse of such other person.

38 U.S.C. § 101(3); *see* 38 C.F.R. § 3.50(b) (2005). If "surviving spouse" status is discontinued because a surviving spouse remarries, or lives with another person and holds himself or herself out openly to the public as the spouse of that person, section 103(d)(3) provides that his or her DIC benefits can be reinstated if the remarriage ends or "[i]f the surviving spouse of a veteran ceases living with another person and holding himself or herself out openly to the public as that person's spouse." 38 U.S.C. § 103(d); *see* 38 C.F.R. §§ 3.55(a), 3.215 (2005).

Here, the appellant asserts that section 103(d)(3) warrants reinstatement of her DIC benefits on the grounds that she has stopped living with "another person" and has stopped holding herself out "openly to the public as that person's spouse" since the death of Mr. Claveria in 1988. 38 U.S.C. § 103(d)(3). This argument, however, misconstrues the statute's intended purpose, which is to reinstate benefits for a "surviving spouse" whose status was revoked because he or she remarried (or lived with another person and held himself or herself openly to the public as the spouse of that person), but where the remarriage has terminated (or where the former "surviving spouse" has ceased living with another person and holding himself or herself out as the spouse of that person). *See* 144 CONG. REC. H3,950 (statement of Rep. Stump) (stating that this provision will allow surviving spouses to resume eligibility for DIC benefits if their subsequent remarriage is terminated). Although it is true that following the death of Mr. Claveria the appellant was no longer openly living with another person, her benefits were not revoked because of her relationship with Mr. Claveria. Rather, the appellant's benefits were forfeited, under section 6103(a), because of her false statement that she had not remarried, not had children with, or not lived with Mr. Claveria, or any other man

since the death of the veteran, in order to obtain those benefits. The death of Mr. Claveria had no impact on the decision and facts surrounding the forfeiture. Accordingly, the Court finds that the appellant's section 103(d)(3) argument lacks merit.

## IV. CONCLUSION

On consideration of the foregoing, the June 10, 2004, Board decision is AFFIRMED. Because the Court's decision renders judgment on this matter, Ms. Flores' January 26, 2006, motion for continuance of panel review is DENIED on the grounds that it is now moot.