# United States Court of Appeals for the Federal Circuit

**Corrected Cover Sheet:  March 7, 2007**

2006-7198


ROSALIA A. FLORES,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.


Rosalia A. Flores, of Dagupan City, Pangasinan, Philippines, pro se.

Lauren S. Moore, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington DC, for respondent-appellee.  With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director.  Of counsel on the brief was Michelle D. Bernstein, United States Department of Veterans Affairs, of Washington, DC.  Of counsel was David J. Barrans.


Appealed from:  United States Court of Appeals for Veterans Claims

Judge Robert N. Davis

# United States Court of Appeals for the Federal Circuit

2006-7198

ROSALIA A. FLORES,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED: February 20, 2007

_____

Before GAJARSA, LINN, and MOORE, Circuit Judges.

GAJARSA, Circuit Judge.

Rosalia Flores seeks review of the United States Court of Appeals for Veterans Claims ("Veterans Court") decision affirming the ruling of the Board of Veterans' Appeals ("Board") holding that Ms. Flores forfeited her rights to Department of Veterans Affairs ("VA") benefits pursuant to 38 U.S.C. § 6103(a). Flores v. Nicholson, 19 Vet. App. 516 (2006). We affirm.

BACKGROUND

In September 1955, Ms. Flores applied for VA dependency and indemnity compensation benefits based on her marriage to Bruno Flores, a deceased veteran of the Philippine Army. In April 1956, in response to a letter from Ms. Flores' former father-in-law, Porfirio Flores, the VA Regional Office ("RO") in Manila, Philippines conducted an investigation to determine whether Ms. Flores had been remarried since the death of her husband. As part of the RO's investigation, Ms. Flores gave a sworn statement that she had not remarried, had children with, or lived with any other man since Mr. Flores' death.

In June 1989, in response to an unsigned letter alleging that Ms. Flores had been remarried, the RO conducted another investigation. As part of this investigation, Ms. Flores provided a sworn statement stating that she had not admitted the truth in the 1956 investigation, that she had lived with a man, Resurreccion Claveria, "in an open common law relationship" until Mr. Claveria's death in 1988, and that she had conceived nine children with him. Interviews with two of Ms. Flores' children confirmed this statement. The interviews also revealed that four of Ms. Flores' children with Mr. Claveria had been born before Ms. Flores' sworn testimony in 1956.

The RO then issued a proposed administrative decision recommending that Ms. Flores be charged with a violation of the forfeiture statute, 38 U.S.C. § 6103. In response, Ms. Flores' attorney asserted, in a November 1989 letter, that Ms. Flores had not remarried and that her relationship with Mr. Claveria "was intermitte[nt] and that [Mr.] Claveria had long abandoned her even before the birth of her youngest child."

Nothing further happened until January 1999, when the RO issued a memo stating that "for unknown reasons, the case has not been monitored properly and no final administrative decision has been reached." In April 1999, the director of the VA's Compensation and Pension Service determined that Ms. Flores "knowingly, intentionally, and deliberately" submitted fraudulent information about her relationship with Mr. Claveria in order to obtain VA benefits, violating 38 U.S.C. § 6103(a).

Ms. Flores appealed the VA's decision to the Board. On March 26, 2001, the Board determined that the evidence established "beyond any reasonable doubt, that the appellant knowingly, intentionally, and deliberately presented false statements and information in order to obtain VA benefits in 1956." Ms. Flores appealed the Board's decision to the Veterans Court, which remanded the matter in order to allow Ms. Flores to present additional evidence and testimony at a personal hearing before the RO. On June 10, 2004, the Board again concluded that Ms. Flores had forfeited her rights to VA benefits under 38 U.S.C. § 6103(a). The Veterans Court subsequently affirmed the Board's decision on March 8, 2006.

Ms. Flores timely filed an appeal to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292.

DISCUSSION

Under 38 U.S.C. § 7292, this court has limited jurisdiction over appeals of decisions of the Veterans Court. Morgan v. Principi, 327 F.3d 1357, 1359-60 (Fed. Cir. 2003); Forshey v. Principi, 284 F.3d 1335, 1338 (Fed. Cir. 2002) (en banc). This court has jurisdiction over appeals from the Veterans Court "with respect to the validity of a decision of [that] Court on a rule of law or of any statute or regulation . . . or any

interpretation thereof (other than a determination as to a factual matter) that was relied on by [that] Court in making the decision." 38 U.S.C. § 7292(a). Except to the extent that an appeal under this chapter presents a constitutional issue, this court may not "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). See also Davis v. Principi, 276 F.3d 1341, 1344 (Fed. Cir. 2002).

The government argues that this court does not have jurisdiction over any of the issues brought before it by the appellant because the Veterans Court "did not interpret or rely upon" any statute or regulation relating to them. The government cites Forshey for this proposition. However, Forshey was decided before Congress enacted the Veterans Benefits Act of 2002, Pub.L. No. 107-330, which modified our jurisdiction over appeals from the Veterans Court. Morgan, 321 F.3d at 1360-61. As we held in Morgan, the Veterans Benefits Act of 2002 expanded our jurisdiction to allow us to decide cases "in which the decision below regarding a governing rule of law would have been altered by adopting the position being urged . . . even though the issue underlying the stated position was not 'relied on' by the Veterans Court." Id. at 1363.

The appellant does present several arguments that are clearly directed at questions of fact or at the application of the law to the facts and over which this court does not have jurisdiction. These include the appellant's contentions (1) that the Veterans Court "failed to note that [she is] an illiterate," (2) that the Veterans Court "failed to note that [she] was not found as married to [Mr.] Claveria and [their] relationship was not open to the public," (3) that "[t]he false reports of Porfirio Flores was [sic] an ill-intended hoax aside [sic] the fact that he was a pro-Japanese" who

2006-7198                              4

"wanted to rape [her]," and (4) that the "[VA] investigation proved futile in locating [her] marriage to [Mr. Claveria]." As the government correctly argues, these are all issues related to the factual findings of the administrative process below and over which this court has no jurisdiction. 38 U.S.C. § 7292(d)(2). The appellant's contentions that the statute of limitations and the doctrine of laches were violated by the Veterans Court and that "[t]he stoppage for reopening of [her] award in [the] 1950's is arbitrary and without rational justification" are also directed at issues regarding the application of the law to the facts of the case over which this court has no jurisdiction. Id.

The appellant also argues that her rights under the Equal Protection Clause of the Constitution were violated and that her "award granted by the Secretary is protected by [38 U.S.C. § 110]."[1] However, the appellant's "characterization of that question as constitutional in nature does not confer upon us jurisdiction that we otherwise lack." Helfer v. West, 174 F.3d 1332, 1335 (Fed. Cir. 1999). The appellant's argument on this point appears to be aimed at the merits of her claim and does not raise a separate constitutional issue. Therefore, this court has no jurisdiction to consider this issue. 38 U.S.C. § 7292(a); Helfer, 174 F.3d at 1335.

However, the appellant argues that the Veterans Court "failed to interpret [38 U.S.C. § 103(d)(3)] concerning [the] restoration of benefits to widows who had remarried another." The government contends that this court lacks jurisdiction to consider this question because "it would involve the application of law to the facts of this case." However, to the extent that the appellant appears to disagree with the Veterans

---

[1] The appellant contends that § 110 provides for the preservation of her pension. It does not. Section 110 deals with the preservation of a disability *rating*, which is not at issue here.

Court's finding that § 103(d)(3) does not operate to restore benefits forfeited under § 6103(a), she raises a question regarding the interpretation of a statute over which this court has jurisdiction. 38 U.S.C. § 7292(a). This court reviews such questions of statutory interpretation de novo. Summers v. Gober, 255 F.3d 1293, 1295 (Fed. Cir. 2000).

Section 103(d)(3) provides that "[i]f the surviving spouse of a veteran ceases living with another person and holding himself or herself out openly to the public as that person's spouse, the bar to granting that person benefits as the surviving spouse of the veteran shall not apply . . . ." The appellant argued before the Veterans Court that this section entitled her to the reinstatement of her benefits because she had stopped "living with another person" and had stopped "holding . . . herself out openly to the public as that person's spouse" since Mr. Claveria's death in 1988. 38 U.S.C. § 103(d)(3). The Veterans Court, however, found that § 103(d)(3) did not apply because the appellant's benefits had been terminated under § 6103(a)[2] on account of her false statements, not because of her relationship with Mr. Claveria. The appellant reiterates her argument to this court that § 103(d)(3) operates to restore benefits for those widows that were rehabilitated under its provisions.

---

[2] Section 6103(a) provides:
Whoever knowingly makes or causes to be made or conspires, combines, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by the Secretary (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and benefits under all laws administered by the Secretary (except laws pertaining to insurance benefits).

We agree with the Veterans Court's interpretation of § 103(d)(3). The section only works to restore benefits that have been lost due to "the bar to granting that person benefits as the surviving spouse of the veteran." Id. The bar referred to is that provided by the definition of a surviving spouse, which excludes a person who has remarried or has "since the death of the veteran . . . lived with another person and held himself or herself out openly to the public to be the spouse of such person." 38 U.S.C. § 101(3). Section 103(d)(3) is not a general grant of amnesty, as argued by the appellant, to all persons whose remarriages have terminated. It is simply a means of allowing a person whose remarriage barred them from receiving benefits to receive those benefits once the relationship that caused the bar has ended. Section 6103(a) bars a person's benefits because of a fraud committed by her, not because of her lack of status as a surviving spouse. Therefore, § 103(d)(3) does not allow for the reinstatement of benefits lost due to § 6103(a).

## CONCLUSION

We hold that the Veterans Court correctly concluded that benefits lost under § 6103(a) cannot be restored under § 103(d)(3). Because the appellant does not raise any other issues over which we have jurisdiction, we affirm.

## AFFIRMED

No costs.