NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

---

2022-1253

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PGR2020-00055.

---

Decided:  January 20, 2023

---

MARK A. LEMLEY, Lex Lumina PLLC, New York, NY, argued for appellants.  Also represented by MARK P. MCKENNA; ANDREW HIMEBAUGH, BARRY IRWIN, IFTEKHAR ZAIM, Irwin IP LLC, Chicago, IL.

JOSEPH HERRIGES, JR., Fish & Richardson P.C., Minneapolis, MN, argued for appellee.  Also represented by JOHN A. DRAGSETH; NITIKA GUPTA FIORELLA, Wilmington, DE; LAURA E. POWELL, Washington, DC.

––––––––––––––––––––

Before LOURIE, CLEVENGER, and STARK, *Circuit Judges*.

Opinion for the court filed PER CURIAM.

Additional views filed by *Circuit Judge* LOURIE.

Opinion concurring in part and concurring in judgment filed by *Circuit Judge* STARK.

PER CURIAM.

   LKQ Corp. and Keystone Automotive Industries, Inc. (collectively, "LKQ") appeal from a final written decision of the U.S. Patent and Trademark Office Patent Trial and Appeal Board ("the Board") holding that LKQ failed to show by a preponderance of the evidence that U.S. Patent D855,508 (the "'508 patent") was anticipated or would have been obvious over the cited prior art before the effective filing date. *See LKQ Corp. v. GM Glob. Tech. Operations LLC*, PGR2020-00055, Paper 33 (P.T.A.B. Oct. 8, 2021) ("*Decision*"), J.A. 1–65. For the reasons provided below, we affirm.

## BACKGROUND

   GM Global Technology Operations LLC ("GM") owns the '508 patent, which is directed to an "ornamental design for the vehicle front skid bar" as shown below.



FIG. 1

FIG. 2



**FIG. 3**



**FIG. 4**

GM manufactures and sells automotive vehicles. LKQ sells automotive body repair parts for most mainstream vehicle models available, including front skid bars for vehicles manufactured by GM. GM and LKQ had previously been parties to a license agreement, under which LKQ was granted a license to many of GM's design patents. The license agreement expired in February 2022 following a breakdown of renewal negotiations, after which GM sent letters to LKQ's business partners alleging that the now unlicensed LKQ parts infringe its patents.

LKQ petitioned for post-grant review of the '508 patent, asserting that it was anticipated by the design of the 2015 Changfeng Leopaard CS1020 ("Leopaard") and would have been obvious over the Leopaard alone or in combination with the design of the 2012 Chevrolet Equinox ("Equinox"). The Board issued a final written decision concluding that LKQ had not demonstrated by a preponderance of the evidence that the '508 patent was anticipated or would have been obvious before the effective filing date. *Decision*, J.A. 1–65.

First, the Board determined that the ordinary observer would include both retail consumers who purchase replacement skid bars and commercial replacement part buyers. *Decision*, J.A. 14–16. In so doing, the Board emphasized that the "'508 design claims a 'vehicle front skid bar,' not a vehicle in total." *Decision*, J.A. 15.

Second, applying that understanding of the ordinary observer, the Board concluded that, although there were some similarities, the references produced depicting the Leopaard design did not show certain aspects of the claimed design (*e.g.*, the bottom or the sides) and what was visible from the provided images created a different overall impression. *Decision*, J.A. 18, 42–61. Namely, the claimed features in the aggregate contributed to a "rugged, chiseled, three-dimensional overall appearance" that the Leopaard's sloping design did not have. *Decision*, J.A. 57. The Board was ultimately not persuaded that an ordinary observer would be deceived into purchasing the Leopaard skid bar supposing it to be the claimed skid bar, finding no anticipation.

Third, applying the tests established in *Rosen* and *Durling*, the Board found that LKQ failed to identify a sufficient primary reference, and therefore failed to prove obviousness by a preponderance of the evidence. *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996); *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982); *Decision*, J.A. 57–60. Because the Board found that the Leopaard did not qualify as a proper primary reference under *Rosen*, the Board did not turn to *Durling* step two and look beyond the Leopaard to the Equinox. *Decision*, J.A. 57–60. The Board further noted that even if the Leopaard could serve as a sufficient primary reference, LKQ only proposed modifying the Leopaard skid bar "to have the vertical side edges" of the Equinox. As explained by the Board, because many other differences existed between the claimed design of the '508 patent and the Leopaard, LKQ could not meet its burden to demonstrate obviousness of the claimed design. *Decision*, J.A. 57–60.

In summary, the Board concluded that LKQ had not demonstrated that the claimed design of the '508 patent was anticipated or would have been obvious before the effective filing date. LKQ appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

LKQ CORPORATION v.                                                    5
GM GLOBAL TECHNOLOGY OPERATIONS LLC

## DISCUSSION

LKQ raises two main challenges on appeal. First, LKQ contends that the Board erred in finding that the ordinary observer would include only retail consumers who purchase replacement skid bars and commercial replacement part buyers, and, ultimately, in finding no anticipation. Second, LKQ contends that the *Rosen* and *Durling* tests on which the Board relied in its obviousness analysis have been implicitly overruled by the Supreme Court's decision in *KSR International Co. v. Telflex, Inc.*, 550 U.S. 398 (2007). We address each argument in turn.

We review the Board's legal conclusions *de novo* and its factual findings for substantial evidence. *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1339 (Fed. Cir. 2019). Anticipation is a question of fact reviewed for substantial evidence. *Id.*; *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1237 (Fed. Cir. 2009). The ultimate determination of obviousness is reviewed *de novo*, and any underlying factual findings are reviewed for substantial evidence. *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

I

We first consider LKQ's challenge to the Board's determination that LKQ failed to meet its burden to prove that the '508 patent was anticipated by the Leopaard design. LKQ first argues that the Board erred in not finding that original retail vehicle purchasers are the correct ordinary observer. LKQ notes that replacement parts are merely a downstream consequence of prior whole vehicle sales, that skid bars are not sold in the first instance as replacement products, and that replacement products make up a small subset of total skid bar sales. LKQ further asserts that that alleged error led the Board to place undue emphasis

on allegedly trivial differences between the claimed design of the '508 patent and the Leopaard design that would not have mattered to the correct ordinary observer, and that the Board failed to properly compare the designs as a whole.

GM responds that the Board correctly defined the ordinary observer. GM emphasizes that the '508 patent is not directed to the design of a whole vehicle, but rather a design for a specific part of a vehicle. Therefore, GM argues that the ordinary observer must be the person who purchases that part or is otherwise sufficiently interested in that part, not necessarily the vehicle as a whole. GM further argues that, regardless of the ordinary observer, the Board's holding that the claimed design of the '508 patent is not anticipated by the Leopaard design was supported by substantial evidence.

We agree with GM that the Board's finding that the ordinary observer would include both retail consumers who purchase replacement skid bars and commercial replacement part buyers was supported by substantial evidence. Defining the ordinary observer is a fact-dependent inquiry. *See Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007) (abrogated on other grounds by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)). It is through the lens of the ordinary observer that the anticipation inquiry is viewed. *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). The Board's finding that the ordinary observer here includes repair professionals and vehicle owners purchasing replacement parts, and does not include retail vehicle purchasers, is well-grounded in the record. LKQ itself recognized that repair shop mechanics and auto parts store employees who order replacement parts may be ordinary observers of skid bars. J.A. 195–96. And LKQ cannot disagree that there is a market for the claimed skid bar alone, given that its business is selling individual replacement parts. *See* Appellant Br. at 1. That GM sells whole vehicles to retail consumers, rather

than skid bars to car manufacturers, is of no consequence. As the Board noted, the ordinary observer test requires consideration of the features visible in the "normal use" lifetime of the accused product, *i.e.*, "from the completion of manufacture or assembly until the ultimate destruction, loss, or disappearance of the article." *Decision*, J.A. 12 (quoting *Int'l Seaway*, 589 F.3d at 1241). *See also Contessa Food Prods. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002) ("[T]he 'ordinary observer' analysis is not limited to those features visible during only one phase or portion of the normal use lifetime of an accused product."). The "normal use" would thus include repair or replacement.

Most notably, the claimed design of the '508 patent is not the design of a whole vehicle, but rather a design of a specific part of a vehicle. J.A. 66–71. In *Arminak* and *Keystone*, we recognized that the ordinary observer can be the purchaser of a component part of a later-assembled product as opposed to the purchaser of the later-assembled product. *Arminak*, 501 F.3d at 1321–24; *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed. Cir. 1993). The same is true here. In this case, substantial evidence supports the Board's conclusion that the ordinary observer is a person who purchases that part or is otherwise sufficiently interested in that part, not the vehicle as a whole. *See Egyptian Goddess*, 543 F.3d at 665.

When determining whether a design patent is anticipated, we consider:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other . . . .

*Gorham*, 81 U.S. at 528.[1]  Under this standard, substantial evidence supports the Board's finding of no anticipation.

Most importantly, the references submitted by LKQ depicting the Leopaard design do not sufficiently show certain aspects of its design, *e.g.*, the bottom or the sides, to enable comparison with the claimed design of the '508 patent.  As the Board found:

> LKQ has not produced images of the Leopaard that would enable a persuasive comparison with corresponding views of the claimed invention.  The evidence produced by LKQ related to the Leopaard simply fails to clearly show several claimed aspects of the design. . . .  The exhibits do not show a sufficient bottom view to allow comparison and the exhibits also have obscured side views due to other trim features covering the outsides of the skid board.

*Decision*, J.A. 18.  LKQ's expert admits that these perspectives are obscured or not shown in the references they provided.  J.A. 832 at 2:5, 13–17.  This impedes a comparison of the claimed design to the reference by *any* ordinary observer and is alone sufficient to support a finding of no anticipation.  It would be speculation to assume that the unshown features have certain characteristics that match the claimed invention.

Additionally, given the evidence in the record, the Board concluded that the design claimed in the '508 patent and the Leopaard design created different overall

---

[1]    While the test articulated in *Gorham* was with regard to infringement, we have found "that the same tests must be applied to infringement and anticipation," as to "prevent an inconsistency from developing between the infringement and anticipation analyses." *Int'l Seaway*, 589 F.3d at 1240.

impressions. The Board pointed to several differences in the designs: (1) the front face, (2) the outwardly projecting top and side surfaces, (3) the size, shape, and positioning of the recesses, and (4) the curvature from side-to-side. *Decision*, J.A. 56–57. And LKQ's claim that the Board failed to properly compare the designs as a whole is without merit. The Board clearly found the claimed design of the '508 patent created a rugged, chiseled, durable, three-dimensional truck-like appearance, while the skid bar of the Leopaard had a softer, sloping appearance. *Decision*, J.A. 57. We agree and find the Board's finding of no anticipation was supported by substantial evidence.

## II

LKQ next argues that the Supreme Court's decision in *KSR* implicitly overruled the long-standing *Rosen* and *Durling* tests for obviousness of design patents, and therefore the Board's decision applying such tests must at least be vacated and remanded. For design patent obviousness, *Durling* outlines a two-step analysis. First, it must be determined whether a primary reference, also known as a *Rosen* reference, exists with characteristics "basically the same" as the claimed design by discerning the visual impression of the design as a whole. *Durling*, 101 F.3d at 103; *Rosen*, 673 F.2d at 390–91. Second, if a satisfactory primary reference exists, the court must consider whether an ordinary designer would have modified the primary reference to create a design with the same overall visual appearance as the claimed design. *Id.* This test safeguards against a challenger picking and choosing features from multiple references to create something entirely new, fundamentally changing the overall visual impression of the original designs. *See In re Jennings*, 182 F.2d 207, 208 (C.C.P.A. 1950) (explaining that one must start with "something in existence -- not with something that might be brought into existence by selecting individual features from prior art and combining them").

While *KSR* does not address *Rosen* or *Durling*, LKQ argues that its holding implicates the test established in these cases. GM argues that LKQ has forfeited this argument by not raising it before the Board, and even if it were not forfeited, *KSR* does not overrule *Rosen* or *Durling*.

A

As a general proposition, a federal appellate court does not consider issues not raised before the lower tribunal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). The exact phrasing of the argument need not have been used below "so long as it can be said that the tribunal was 'fairly put on notice as to the substance of the issue.'" *Nike Inc. v. Adidas AG,* 812 F.3d 1326, 1342 (Fed. Cir. 2016) (citing *Consolidation Coal Co. v. United States,* 351 F.3d 1374, 1378 (Fed. Cir. 2003) (quoting *Nelson v. Adams,* 529 U.S. 460, 469 (2000) ("But [issue preservation] does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue."))).

But even if an issue was not presented below, there is no absolute bar to considering and deciding the issue on appeal, as forfeiture is a matter of discretion. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) ("An appellate court retains case-by-case discretion over whether to apply waiver."). In *Icon Health and Fitness, Inc. v. Strava, Inc.*, we set forth some relevant considerations to guide the exercise of such discretion. 849 F.3d 1034, 1040 (Fed. Cir. 2017) (citing *Automated Merch. Sys., Inc. v. Lee*, 783 F.3d 1376, 1379 (Fed. Cir. 2015)). These considerations include whether the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice, and whether the issue presents significant questions of general impact. *Id.*

In this case, appellants argue that *KSR*, 550 U.S. 398, overrules this court's long-standing precedents, *Rosen*, 673 F.2d 388, and *Durling*, 101 F.2d 100, which outline the test

for determining design patent obviousness.  In their petition to the Board, the appellants raised their *KSR* argument in the following manner:

> As a final matter, the Federal Circuit has, to date, been silent regarding whether the Supreme Court's opinion in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), governs design patent obviousness, other than to say that it was "not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of KSR." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384–85 (Fed. Cir. 2009).[2] In a design patent obviousness analysis, to modify a primary reference, a secondary reference must be "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Titan Tire*, 566 F.3d at 1381 (quoting *Durling*, 101 F.3d at 103). To the extent that the "so related" test operates to unduly limit the scope of design patent obviousness, such an overly restrictive view would run afoul of *KSR*'s proscription against rigid restrictions on the scope of an obviousness analysis.

J.A. 186–87.

We consider that this assertion in the petition is sufficient to preserve the argument that LKQ seeks to make, that *KSR* overrules our current test for design patent

---

[2]   In *KSR*, the Supreme Court rejected the "rigid, mandatory formula" embodied in the Federal Circuit's then-prevailing "teaching suggestion motivation" requirement as improperly limiting the obviousness inquiry and, instead, prescribed a more flexible approach to obviousness and motivation to combine prior art teachings.  *KSR*, 550 U.S. at 420–22.

obviousness.  While not extensive, LKQ's argument enunciates concern that the applied obviousness test was "overly restrictive" in light of *KSR*, which is the heart of its argument on appeal.  To be sure, LKQ could have made its argument in depth.  However, such arguments would have been to an unreceptive audience, as the Board already had heard and rejected the argument.  *See, e.g.*, *Johns Manville Corp. v. Knauf Insulation, Inc.*, IPR2015-1453, 2017 Pat. App. LEXIS 3419 at *63-64 (P.T.A.B. Jan. 11, 2017) (concluding that there was no suggestion that *KSR* is "germane to an obviousness determination in design patents, or has any effect upon the relevance of the *Durling* analysis," and that, regardless, the "basically the same test" is consistent with *KSR*).

Further, this challenge to *Rosen* and *Durling* is a pure question of law that undoubtedly presents a significant question of general impact, favoring the exercise of our discretion to hear and decide this issue.  *See Icon Health*, 849 F.3d at 1040.  Moreover, we may decide to apply the correct law even if the parties did not argue it, so long as the issue is properly before the court.  *Forshey v. Principi*, 284 F.3d 1335, 1356–57 (Fed. Cir. 2002) (en banc) (superseded by statute on other grounds, *Flores v. Nicholson*, 476 F.3d 1379, 1381 (Fed. Cir. 2006)).  Given the aforementioned considerations and in our discretion, we decline to find LKQ's *KSR* argument forfeited.

B

Appellant argues that the Supreme Court, in reviewing *Teleflex, Inc. v. KSR Int'l Co.*, 119 Fed. Appx. 282 (Fed. Cir. 2005), overruled *Rosen* and *Durling*.  The Court stated, "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation . . . ."  *KSR*, 550 U.S. at 419.  The Court did note that the teaching, suggestion, and motivation test "captured a helpful insight," but it found it overly "rigid."  *Id*. at 418.  However, *KSR* did not involve or discuss design

patents, which is the type of patent we have here before us and that was addressed by *Rosen* and *Durling*.

And we note that in the more than fifteen years since *KSR* was decided, this court has decided over fifty design patent appeals. In these appeals, this court has continually applied *Rosen* and *Durling* just as it had in the decades preceding. Notably, the correctness of our current law in light of *KSR* was raised in only two of those over fifty appeals, only tangentially, and not addressed in our decisions in those two cases. This challenge is therefore an outlier.

We, as a panel, cannot overrule *Rosen* or *Durling* without a clear directive from the Supreme Court. *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2016) (explaining panels are "bound by prior panel decisions until they are overruled by the court en banc or the Supreme Court"). *See also California Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 990–91 (Fed. Cir. 2022) (explaining the panel only had authority to overrule circuit precedent without en banc action given the Supreme Court's reasoning undermining said circuit precedent). As explained above, it is not clear the Supreme Court has overruled *Rosen* or *Durling*. The panel is therefore bound to apply existing law to this appeal.

C

Finally, applying existing law, we affirm the Board's non-obviousness determination, and conclude that its factual findings are supported by substantial evidence.

Our above discussion of the differences between the Leopaard design and the claimed design of the '508 patent applies equally here. Although the tests for anticipation and obviousness of design patents are viewed through different lenses—the ordinary observer and ordinary designer, respectively—we, like the Board, acknowledge the relevance of the findings of one to the other. *See In re Nalbandian*, 661 F.2d 1214, 1217 (C.C.P.A. 1981) (discussing

the "ordinary observer" and "ordinary designer" tests); *Decision*, J.A. 57–59 (citing *LKQ Corp.*, PGR2020-00055, Ex. 2004, ¶ 86).

In sum, LKQ failed to show that the Leopaard creates "basically the same" visual impression as the claimed design. *Durling*, 101 F.3d at 103; *Rosen*, 673 F.2d at 390–91. The Board found several differences between the claimed design and Leopaard, including (1) the front face, (2) the outwardly projecting top and side surfaces, (3) the size, shape, and positioning of the recesses, and (4) the curvature from side-to-side. *Decision*, J.A. 56–57. The Board found that these "differences in the aggregate create an overall ornamental design that is not basically the same between the claimed design of the '508 patent and the Leopaard." *Id.* at 58. For example, the "features of the claimed design that are missing from the Leopaard are significant in the aggregate, and contribute to its rugged, chiseled, three-dimensional overall appearance that contrasts with the Leopaard's appearance dominated by a rearward sloping lower surface and relatively shallow recesses." *Id.* at 57. In reaching these determinations, the Board credited the testimony of GM's witnesses. *Id.* We cannot find that the Board erred in valuing certain testimony over others. *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002) (where "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence"). The Board's finding that Leopaard did not create "basically the same" visual impression as created by the claimed design is therefore supported by substantial evidence.

Further, as discussed in Section I, the references provided by LKQ depicting the Leopaard did not show all the features necessary for comparison (*e.g.*, the bottom or sides). *Decision*, J.A. 18, 58–60. As the Board noted, "There are simply too many aspects of the claimed design that are

not adequately disclosed by the images of the [Leopaard]." *Id*. at 60. This amounts to a failure of proof. We therefore affirm the Board's conclusion that LKQ did not show that the '508 patent would have been obvious over the cited references.

## CONCLUSION

We have considered LKQ's remaining arguments but find them unpersuasive. For the foregoing reasons, the decision of the Board is *affirmed*.

**AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

————————————

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

————————————

2022-1253

————————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PGR2020-00055.

————————————

LOURIE, *Circuit Judge*, additional views.

The panel resolves this case by determining that substantial evidence supports the Board's conclusion that the claims of the '508 patent are not unpatentable as anticipated or obvious. I agree. I write separately to respond to the assertion by appellant that the Board improperly relied on our predecessor court's *Rosen* decision for its rationale in deciding its case. Appellant argues that *Rosen*, whatever its validity at the time it was decided, is inconsistent with, and hence was implicitly overruled, by the Supreme Court in *KSR*. The panel resolves the case without having

to reach this issue, but I comment separately on the argument appellant raises, but which we do not reach.

*Rosen* was decided by the Court of Customs and Patent Appeals in 1982, sitting with its usual en banc panel of Judges Markey, Rich, Baldwin, Miller, and Nies, hardly a group unversed in patent law. *Rosen*, in reversing the Patent Office's Board of Appeals, stated that "there must be a reference, a something in existence, the design characteristics of which are basically the same as the claimed design in order to support a holding of obviousness." *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) (citing *In re Jennings*, 182 F.2d 207, 208 (C.C.P.A. 1950)).

Appellant argues that the Supreme Court in reviewing *Teleflex, Inc. v. KSR Int'l Co.*, 119 Fed. Appx. 282 (Fed. Cir. 2005), a non-precedential decision of ours that recited almost as boilerplate the longstanding requirement that, in evaluating a combination of references asserted to render a claimed invention obvious, there must be some teaching, suggestion, or motivation shown in the prior art to combine the references, overruled *Rosen*. The Court stated, "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation . . . ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 419 (2007). The Court did note that the teaching, suggestion, and motivation test "captured a helpful insight," but it found it overly "rigid." *Id*. at 418. That essentially is the broad concept that appellant now asserts has overruled an almost forty-year-old design patent decision that this court has been bound to follow and has continued to follow in the decade since *KSR* was decided.

I disagree. First, *KSR* did not involve design patents, which is the type of patent we have here before us. Utility patents and design patents are distinct types of patents. Utility patents protect processes, machines, manufactures, compositions of matter, and improvements thereof. But their inventions must be "useful." 35 U.S.C. § 101. A design

LKQ CORPORATION v.                                      3
GM GLOBAL TECHNOLOGY OPERATIONS LLC

patent protects ornamentation, the way an article looks, 35 U.S.C. § 171. *See* M.P.E.P. § 1502.01. Claims and claim construction in design patents are thus quite different compared with utility patents. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) (questioning how "a court could effectively construe design claims, where necessary, in a way other than by describing the features shown in the drawings."); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)) (finding that a design is better represented by an illustration than a description).

While 35 U.S.C. § 103, which deals with obviousness, does not differentiate between types of inventions, and hence applies to all types of patents, the considerations involved in determining obviousness are different in design patents. Obviousness of utility patents requires considerations such as unexpected properties, utility, and function. Design patents, on the other hand, relate to considerations such as the overall appearance, visual impressions, artistry, and style of ornamental subject matter. Ornament is in the eyes of the beholder. Functional utility is objective.

What is the utility or function of something that is ornamental? To be sure, it may also be functional and have use, as do the skid bars in the case before us, but that function is beside the point when considering whether its ornamental features would have been obvious. And what is an unexpected property in the context of design patents, for it must be related to ornament, as function is not to be considered in evaluating obviousness of a design?

Obviousness of an ornamental design thus requires different considerations from those of a utility invention. *KSR* did not address any of these considerations, and it did not even mention design patents. Surely, it did not intend to speak to obviousness of designs, and what was said about a test long applied to utility inventions was not

indicated to apply to design patents.  It cannot reasonably be held to have overruled a precedent of one of our predecessor courts involving a type of patent it never mentioned.

A comprehensive review of obviousness in design patents, *Overcoming the "Impossible Issue" of Nonobviousness in Design Patents*, supports the view that "*KSR* has very limited, if any, applicability to design patents." Janice M. Mueller and Daniel Harris Brean, 99 KY. L. J., 419, 518 (2011).  It further states that, "[m]ost of the *KSR* Court's discussion is completely irrelevant to what design patents protect." *Id*.  It notes that "[t]he subject matter of a design patent is fundamentally different from a utility patent, as evidenced by the separate statutory provisions that define the eligible subject matter of each type of patent." *Id*.  "Indeed, a patented design 'need not have any practical utility,' the antithesis of a utility invention."  *Id*.

Second, while *Rosen* may have overstated its point in adding to the quoted *Jennings* language such as that the primary reference must have design characteristics that are "basically the same" as those of the claimed design, this statement hardly reflects the rigidity the Court was condemning in *KSR*.  673 F.2d at 391.

And finally, *Rosen* was not essentially incorrect.  In any obviousness analysis, the question is whether the claimed invention was obvious, but obvious over *what*.  One has to start from somewhere.  *See K/S Himpp v. Hear-Wear Techs.*, 751 F.3d 1362, 1366 (Fed. Cir. 2014) (finding that an examiner may not rely on his common knowledge without a supporting prior art reference) (citing M.P.E.P. § 2144.03).

In any event, whether *Rosen* was right or wrong, or over-simplified, the Supreme Court, in *KSR*, reviewing a decision involving a utility patent, did not address the basic concept of beginning an obviousness analysis in design patents by looking for a "something in existence."  And, especially, it did not overrule *Rosen*.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**LKQ CORPORATION, KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,**
*Appellants*

**v.**

**GM GLOBAL TECHNOLOGY OPERATIONS LLC,**
*Appellee*

---

2022-1253

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PGR2020-00055.

---

STARK, *Circuit Judge,* concurring in part and concurring in judgment.

I agree with the majority's conclusion that the Board had substantial evidence to conclude LKQ failed to show that the '508 patent was anticipated or would have been obvious.  Accordingly, I join the majority's anticipation analysis and most of its obviousness analysis.  However, for the reasons I set forth fully in *LKQ Corp., Keystone Automotive Industries, Inc. v. GM Global Technology Operations LLC*, No. 21-2348 (Fed. Cir. Jan. 20, 2022), I

2                                        LKQ CORPORATION v.
                        GM GLOBAL TECHNOLOGY OPERATIONS LLC

respectfully decline to join parts II.A and II.B of the majority's opinion.