# United States Court of Appeals for the Federal Circuit

2008-7084

HENRY J. SKOCZEN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas argued for claimant-appellant.

Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief was Jeanne E. Davidson, Director.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Robert N. Davis

# United States Court of Appeals for the Federal Circuit

2008-7084

HENRY J. SKOCZEN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 06-0127, Judge Robert N. Davis.

_____

DECIDED: May 7, 2009

_____

Before MICHEL, <u>Chief Judge</u>, PROST, <u>Circuit Judge</u>, and GETTLEMAN, <u>District Judge</u>.[*]

MICHEL, <u>Chief Judge</u>.

In this veterans appeal, we are asked to provide the proper interpretation of 38 U.S.C. § 5107(a) (2006). Because the Court of Appeals for Veterans Claims ("the Veterans Court") correctly construed the statute as imposing evidentiary responsibilities on the claimant as well as the Department of Veterans Affairs ("VA"), we affirm.

---

[*] The Honorable Robert W. Gettleman, District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

**BACKGROUND**

Henry J. Skoczen, a World War II veteran, saw active military service from May 1943 to December 1945. Skoczen filed a claim for VA benefits in 2000 for various conditions including post-traumatic stress disorder ("PTSD"). He completed a VA psychiatric examination in 2002, and the Regional Office ("RO") granted service connection for PTSD, assigning an initial 50 percent rating. Skoczen then filed a notice of disagreement ("NOD") in which he claimed total impairment due to his PTSD symptoms and that he was therefore entitled to a higher rating. The RO issued a statement of the case ("SOC"), which Skoczen then appealed to the Board of Veterans' Appeals ("Board"). The following year, in November 2003, the Board remanded Skoczen's claim for further development, including another psychiatric examination. In 2004, after additional development, the RO denied the request for an increased rating in a supplemental SOC. Skoczen appealed. After the 2004 supplemental SOC, Skoczen's spouse submitted a statement, indicating that Skoczen's PTSD had worsened. In response, the Board again remanded for additional development of his claim.

Following additional development, the RO again denied the claim, but, upon review, the Board increased the rating to 70 percent. Although the Board increased the rating, it also found that the record lacked evidence of manifestations meeting the criteria for a 100 percent rating under VA's schedule for rating disabilities.

Skoczen appealed this Board decision to the Veterans Court. He argued that he was due a 100 percent rating "because VA did not carry its alleged burden to affirmatively prove that the 100 percent rating requirements had not been met." He

further argued that statutory and regulatory changes effected by the Veterans Claims Assistance Act, Pub. L. No. 106-475, 114 Stat. 2096 (2000) ("VCAA"), "removed any burden of production of evidence from a claimant."

The Veterans Court disagreed and, on December 21, 2007, affirmed the Board's decision. The court rejected Skoczen's contentions that a veteran need only submit a facially valid claim. The Veterans Court observed that, "after a comprehensive review of the medical evidence concerning [Skoczen's] PTSD, the Board found that the evidence satisfied the criteria for a 70% disability, but not a 100% disability."

The Veterans Court entered judgment on January 15, 2008. On March 10, 2008, Skoczen timely filed his appeal.

## ANALYSIS

### I. Jurisdiction and Standard of Review

We have authority to review decisions of the Veterans Court regarding the "validity of any statute or regulation or any interpretation thereof" and to "interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c); Flores v. Nicholson, 476 F.3d 1379, 1381 (Fed. Cir. 2007). We review the interpretation of statutory provisions without deference. Hogan v. Peake, 544 F.3d 1295, 1297 (Fed. Cir. 2008); Stanley v. Principi, 283 F.3d 1350, 1354 (Fed. Cir. 2002). "In cases where the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of a veteran's claim, we treat the application of law to undisputed fact as a question of law." Conley v. Peake, 543 F.3d 1301, 1304 (Fed. Cir. 2008).

**II. Interpretation of 38 U.S.C. § 5107(a)**

Section 5107(a) of Title 38 was most recently amended in 2000, as part of the VCAA. We have not had occasion to examine the meaning of section 5107(a), as amended by the VCAA until this case.

**A. Statutory Text and Framework**

In statutory interpretation, we begin with the text. <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438, 450 (2002); <u>Bazolo v. West</u>, 150 F.3d 1380, 1382 (Fed. Cir. 1998). If the statute is unambiguous, we need not inquire further. <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 438 (1999); <u>Cox v. West</u>, 149 F.3d 1360, 1363 (Fed. Cir. 1998).

In this case, the statutory section at issue reads as follows:

> (a) Claimant Responsibility.— Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary.

38 U.S.C. § 5107(a) (2006). Prior to the VCAA, section 5107(a) read as follows:

> Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary <u>shall have the burden</u> of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim. Such assistance shall include requesting information as described in section 5106 of this title.

38 U.S.C. § 5107(a) (1994) (emphasis added). Skoczen contends that the elimination of any reference to "burden" relieved the claimant of any burden of proof. The question we must address then is what obligation the phrase "to present and support," in particular "to support," places on the claimant.

The statute contains no explicit definition of "support." Nevertheless, the commonly understood meaning of "support" strongly suggests that, for a veteran to "support" his or her claim for benefits, the veteran must, at some point, provide an

evidentiary basis for the claim.  Numerous dictionaries define "support" as requiring some type of substantiation or corroboration.  See The New Oxford American Dictionary 1708 (2001) ("[to] suggest the truth of; corroborate"); The American Heritage Dictionary of the English Language 1739 (4th ed. 2000) ("[t]o furnish corroborating evidence for: New facts supported her story"); Random House Webster's Unabridged Dictionary 1912-13 (2d ed. 1998) ("to corroborate (a statement, opinion, etc.): Leading doctors supported his testimony"); Webster's Ninth New Collegiate Dictionary 1186 (1990) ("to provide with substantiation: corroborate"); Webster's New International Dictionary Unabridged 2534 (2d ed. 1939) ("[t]o verify; substantiate; as evidence supporting a charge").

In the more general context, when we ask a party to support a legal claim, we generally expect the party to provide some factual basis that would allow us to conclude the claim is valid.  Thus, "a plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (emphasis added) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Int'l Tech. Corp. v. Winter, 523 F.3d 1341, 1348 (Fed. Cir. 2008) ("A misstatement as to site conditions in a government contract can support a claim for breach of contract." (citing Hollerbach v. United States, 233 U.S. 165, 172 (1914))); Sys. Tech. Assocs., Inc. v. United States, 699 F.2d 1383, 1387-88 (Fed. Cir. 1983) ("An act the [g]overnment is empowered to take under law, regulation, or contract may nonetheless support a claim of duress if the act violates notions of fair dealing by virtue of its coercive effect.").  This plain meaning of "support" alone appears enough to confirm our opinion that the "support" requirement

of section 5107(a) obligates the claimant to provide some evidentiary basis for his or her benefits claim.

At times during this appeal, Skoczen argues that section 5107(a) "relieve[s] claimants of any burden to prove entitlement to the claimed benefit." Pet. Br. 10. In other words, according to Skoczen, "a claimant need only present a facially valid claim (though the claimant may do more if the claimant wishes)." Id. at 11. Other times, Skoczen appears to adopt a more moderate stance with respect to the claimant's responsibilities during the claims process. For instance, he "recognizes that there are times when a claimant will need to support a claim by the submission of evidence unavailable to the VA." Reply Br. 4.

The government seems to argue that "claimants seeking VA benefits ultimately bear the burden of establishing that they are entitled to such benefits." Resp't Br. 9. The government states that "there can be no doubt that the claimant bears the burden to prove his claim." Id. With that summary, we can see the point of disagreement over the meaning of section 5107(a).

Part of the difficulty with the briefing in this case is the inflexible application of traditional legal terminology to a unique administrative procedure that doesn't easily succumb to concepts from adversary litigation such as burden of proof. See H.R. Rep. No. 100-963, at 13 (1988) ("In such a beneficial structure [as the veterans' claims process,] there is no room for such adversarial concepts as cross examination, best evidence rule, hearsay evidence exclusion, or strict adherence to burden of proof."). Both parties nevertheless talk in traditional terms of burdens of proof. Skoczen frames the issue as whether section 5107(a) "imposes a burden of proof on a clamant [sic] for

VA benefits." Pet. Br. 1. The government likewise relies on rigid legal terms, arguing that Veterans Court precedent "clearly affirms that claimants bear the burden of proof." Resp't Br. 18. This may occur, in part, because even skilled legal professionals routinely invoke the term "burden of proof" with insufficient precision. Judge Ambro, writing for a panel of the Court of Appeals for the Third Circuit, explained well the dichotomous meaning of "burden of proof":

> Many of the cases we cite use the terms "burden of proof" and "burden of persuasion" interchangeably. Yet the two concepts are not identical. The burden of proof comprises the burdens of production and persuasion. The former is the obligation to come forward with evidence of a litigant's necessary propositions of fact. It often matters most before trial because plaintiffs who have not come forward with hard evidence to support their necessary allegations cannot survive a summary judgment motion by the defense. The burden of persuasion, on the other hand, is the obligation to convince the factfinder at trial that a litigant's necessary propositions of fact are indeed true.

El v. Se. Pa. Transp. Auth. ("SEPTA"), 479 F.3d 232, 237 n.6 (3d Cir. 2007) (citation omitted); see also 21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5122 (3d ed. 2005); cf. Dir., Office of Workers' Comp. Programs v. Greenwich Collieries, 512 U.S. 267, 275-76 (1994) (defining "burden of proof" as meaning "burden of persuasion" in the context of the Administrative Procedure Act). And this very confusion has appeared in this case. Skoczen contends that the statute's "language does not impose upon a claimant a burden of proof." Reply Br. 1. But that assertion by itself is unclear on its face, as it could mean that Skoczen contends that the statute does not impose a burden of persuasion upon the claimant, or alternatively that the statute does not impose a burden of production on the claimant.

To the extent Skoczen argues that section 5107(a) relieves a claimant of any obligation to prove that his or her claim should be awarded, this argument fails.

Section 5107(a) is silent as to the quantum of evidence necessary to grant a veteran's benefit claim. Section 5107(b), however, instead squarely addresses this issue, and we have previously interpreted subsection (b). See Ortiz v. Principi, 274 F.3d 1361, 1365 (Fed. Cir. 2001); see also Gilbert v. Derwinski, 1 Vet. App. 49, 54-55 (1990). Under subsection (b), the claimant enjoys what is termed the "benefit of the doubt rule," or alternatively what may be thought of as an "equality of the evidence" standard (as opposed to the more common "preponderance of the evidence" standard applied in most civil contexts). That is, we can think of this standard as a "burden of persuasion," in that the evidence must rise to a state of equipoise for the claimant to "win." But, at the same time, it may be misleading to call it a traditional burden, which usually rests entirely on a single party in a proceeding. In the veterans' claims adjudication process, the responsibility for developing evidence may, at certain times during the process, reside on both the claimant and VA.

Turning to the so-called "burden of production," Skoczen asserts that "[t]he burden of submitting evidence was eliminated by Congress." Pet. Br. 11. We disagree with the broad, unqualified nature of this statement. True, a claimant generally does not shoulder all the responsibility of providing evidentiary support for his or her benefits claim. Much responsibility generally falls on VA, to the extent Congress has codified that responsibility in section 5103A, which sets forth VA's duty to assist the claimant.[1] Under that statute, VA must "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit." 38 U.S.C. § 5103A(a)(1); see also Moore v. Shinseki, 555 F.3d 1369, 1372 (Fed. Cir. 2009);

---

[1] Prior to the VCAA, the duty to assist was formerly codified in section 5107(a). See 38 U.S.C. § 5107(a) (1994).

Disabled Am. Veterans v. Sec'y of Veterans Affairs, 419 F.3d 1317, 1318-19 (Fed. Cir. 2005) (noting that VA is "generally required" to make reasonable efforts to provide medical examinations). Thus, unlike many administrative proceedings before federal agencies, in veterans proceedings, VA has an affirmative duty to obtain the evidence it reasonably can that is necessary to substantiate the claim. Often, that extends only to government records, such as military, labor, and social security records, and VA's "efforts to obtain those records shall continue until the records are obtained unless it is reasonably certain that such records do not exist or that further efforts to obtain those records would be futile." 38 U.S.C. § 5103A(b)(3).

The claimant, however, will at times have some responsibility to submit evidence corroborating his eligibility for a claimed benefit. Section 5103(a) requires VA to notify the veteran of "any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim." With the notice, VA "shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant." Section 5103(b) specifies that such information or evidence "must be received by the Secretary within one year from the date such notice is sent." The notification and response scheme created by section 5103 contemplates situations in which the claimant will be responsible for producing the evidence to prove eligibility for the benefit. An example would be records of a veteran's private physician. Section 5103 appears irreconcilable with Skoczen's position, as a claimant would have

no obligation to respond to any VA notification pursuant to section 5103(a) or (b) if a true burden of persuasion and burden of production resided fully and solely with VA.

Additionally, 38 U.S.C. § 5124 authorizes VA to accept the claimant's statement—as opposed to some independent documentation—"as proof of the existence of any relationship" relating to the claim, such as marriage, dissolution of a marriage, birth of a child, and death of any family member. In this instance, the statute plainly requires the claimant to submit proof of the relationship issue, albeit the proof required is merely the claimant's statement. Again contemplating a claimant's ability to submit evidence, section 5125 instructs that, when a claimant submits a private physician's report "in support of a claim for benefits," VA may accept that report "without a requirement for confirmation by an examination by a physician employed by the Veterans Health Administration if the report is sufficiently complete to be adequate for the purpose of adjudicating such claim." In the end, Skoczen's proposed statutory construction creates tension with numerous sections in Title 38 that control the evidentiary requirements and process for veterans' claims.

Certain presumptions mandated by Title 38 further erode the foundation of Skoczen's position. A veteran is generally presumed to be "in sound condition when examined, accepted, and enrolled for service." 38 U.S.C. § 1111. Injuries or disease occurring during active duty generally "will be deemed to have been incurred in line of duty." Id. § 105(a); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). For certain medical conditions, the law presumes service connection. See 38 U.S.C. §§ 1112, 1116, 1118. Neither the claimant nor VA has any responsibility to submit or gather evidence relating to service connection if the claimant's particular condition is

statutorily presumed to be service-connected. <u>Routen v. West</u>, 142 F.3d 1434, 1440 (Fed. Cir. 1998) ("The presumption affords a party, for whose benefit the presumption runs, the luxury of not having to produce specific evidence to establish the point at issue."). By implication, when these presumptions are inapplicable, evidence must be presented to support service-connection. Whether submitted by the claimant or VA—as determined by sections 5103 and 5103A, for example—the evidence must rise to the requisite level set forth in section 5107(b).

**B. Legislative History**

The government points to the legislative history of the VCAA as support for its position. In its brief, the government cites an excerpt from House Report No. 106-781, which accompanied H.R. 4864, an earlier version of the bill which became law. <u>See</u> Resp't Br. 12 (<u>citing</u> H.R. Rep. No. 106-781, at 11 (July 24, 2000)). The cited language from the House Report reads as follows:

> The revised section 5107 restates without any substantive change the requirements in existing law that the claimant still has the burden of proving entitlement to benefits, and that the Secretary must provide the benefit of the doubt to the claimant when there is an approximate balance of positive and negative evidence regarding any material issue.

We reject, however, the government's overreliance on this particular excerpt from the legislative history. When one compares the quoted sentence with the version of H.R. 4864 that accompanied the cited House Report, it is clear that the proposed amendment to section 5107(a), at that time, explicitly recited a "burden of proof" requirement:

> (a) Burden of Proof.-Except when otherwise provided by this title or by the Secretary in accordance with the provisions of this title, a claimant shall have the burden of proving entitlement to benefits.

H.R. 4864, 106th Cong. § 4 (as reported by H. Comm. on Veterans' Affairs, July 24, 2000). This proposed amendment, however, never became law. The House Report, purporting to explain the nonsubstantive modification of the statute, at least with respect to the claimant's burden, was actually referring to the bill as it emerged from the House Committee but before it became law. On October 17, 2000, Representative Bob Stump, then Chairman of the House Committee on Veterans' Affairs, moved to amend H.R. 4864, which brought the Senate and House versions into agreement and contained the language now present in section 5107(a). See 146 Cong. Rec. 22,885 (Oct. 17, 2000). Rep. Stump also submitted an explanatory statement on amended H.R. 4864, which detailed the differences between the House, Senate, and compromise versions. Stump's statement explained that, in both the Senate and House versions— versions which did not become law—"the burden of proof to establish entitlement to VA benefits remains with the claimant." Id. at 22,888. With respect to the compromise version, Rep. Stump wrote:

> Compromise Agreement
>
> Proposed section 5107(a) of the compromise agreement provides that a claimant has the responsibility to present and support a claim for the benefit sought. As under current law, the Secretary would be required to consider all information and lay and medical evidence of record, and when there is an approximate balance of positive and negative evidence regarding an issue material to the determination of a matter, the Secretary would be required to give the benefit of the doubt to the claimant.

Id. at 22,889. This summary of the compromise agreement makes no mention of how the enacted revision of 5107(a) affects a veteran's burden to prove his or her claim.

In our view, the government's emphasis of the House Report as being dispositive is misplaced. One might infer that, subsequent to the House Report, Congress changed the language in section 5107(a) because it wanted to remove the burden.

2008-7084                    12

Alternatively, Congress might have thought the particular phraseology was unnecessary to maintain the same allocation of responsibilities between VA and a claimant. The legislative history does not directly speak to the intended meaning of "support" in section 5107(a) as enacted. At best, earlier in Rep. Stump's statement is a section suggesting that Congress considered the term "to support" to be synonymous with "to substantiate":

> It is the Committees' intent that the verb "to substantiate," as used in this subsection and throughout the compromise bill (cf., proposed 5103A(a), 5103A(2), 5103A(g)) be construed to mean "tending to prove" or "to support." Information or evidence necessary to substantiate a claim need not necessarily prove a claim—although it eventually may do so when a decision on a claim is made—but it needs to support a claim or give form and substance to a claim.

146 Cong. Rec. at 22,887. All this merely illustrates that seemingly determinative language from the House Report may or may not be on point. Our review underscores why divining a statute's meaning from legislative history may be "akin to 'looking over a crowd and picking out your friends.'" Patricia M. Wald, Some Observations on the Use of Legislative History in the 1981 Supreme Court Term, 68 Iowa L. Rev. 195, 214 (1983) (quoting a conversation with Harold Levanthal).

Perhaps the only clear intention discernible from the legislative history that is relevant to the present case is Congress's goal of eliminating the "well-grounded claim" requirement. In doing so, Congress explained its objective: VA "would be obligated to assist a claimant in obtaining evidence that is necessary to establish eligibility for the benefit being sought" and "would not be contingent on the claimant filing a claim that is 'well-grounded.'" H.R. Rep. No. 106-781, at 9-10. At the same time, Congress understood that:

certain claims, including those that on their face seek benefits for ineligible claimants (such as a veteran who seeks pension benefits but lacks wartime service), or claims which have been previously decided on the same evidence can be decided without providing any assistance or obtaining any additional evidence, and authorizes the Secretary to decide those claims without providing any assistance under this subsection.

Id. at 10.

In sum, unlike the government, we do not find the legislative history to decisively illuminate the specific issue before us. The thrust of the VCAA's enactment, nevertheless, corroborates that VA's responsibility in the claims adjudication process "is and has been to assist veterans in developing claims and receiving benefits for which they are eligible." H.R. Rep. No. 106-781, at 9. Our interpretation of section 5107(a) aligns with this responsibility.

### C. Policy Rationale

Invoking policy-based reasons, Skoczen also contends that the government's interpretation of the statute is contrary to Congress's desire of providing a non-adversarial, pro-veteran process for adjudicating benefit claims. Asserting that a burden of proof is "consistent with an adversarial proceeding and not with a non-adversarial proceeding," Pet. Br. 6, Skoczen writes that "[t]he imposition of any burden of proof on a claimant seeking VA benefits violates the express intent of Congress to create a non-adversarial adjudication process," id. at 7.

For us to disregard in our analysis the uniquely pro-veteran, non-adversarial nature of the veterans' claims process would be wrong. See H.R. Rep. No. 100-963, at 13 ("Congress has designed and fully intends to maintain a beneficial non-adversarial system of veterans benefits."). Numerous procedural protections guarantee that the claims process is far less adversarial than general civil litigation. For example, a

claimant has wide latitude, compared to general civil litigation, to reopen final claims based on new and material evidence, thus removing the traditional strictures of res judicata. See 38 U.S.C. § 5108; see also Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 311 (1985) (noting that, in the VA process, "[t]here is no statute of limitations, and a denial of benefits has no formal res judicata effect"). A claimant may also reopen a claim, i.e., request revision of a final decision, on the grounds of "clear and unmistakable error." See 38 U.S.C. §§ 5109A, 7111. Similarly, section 5102 imposes upon VA a duty to notify claimants of incomplete applications. See 38 U.S.C. § 5102(b). Ultimately, "[t]he government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them." Barrett v. Nicholson, 466 F.3d 1038, 1044 (Fed. Cir. 2006).

Nothing in our decision today runs afoul of Congress's intention of providing a non-adversarial system of deciding veterans' claims for benefits. Our interpretation of section 5107(a) recognizes VA's primary responsibility of obtaining the evidence it reasonably can to substantiate a veteran's claim for benefits. And our interpretation also accounts for other statutory sections which describe how the responsibilities for corroborating benefits claims are allocated between VA and the claimant. Our interpretation remains true to Congress's plan.

Our decision today is also consistent with our prior discussion of section 5107(a). In Cromer v. Nicholson, 455 F.3d 1346, 1350 (Fed. Cir. 2006), we rejected a petitioner's argument that, when medical records were destroyed by fire while in the government's possession, an adverse presumption of service connection should attach. In coming to this conclusion, we implicitly assumed that section 5107(a) places some responsibilities

on the claimant. See id. (noting that the presumptions urged, "by effectively shifting the burden of proof to the government, conflict" with the standard set forth in section 5107(a)).

In the end, Skoczen argues for a system in which a veteran can, for example, file a claim for 100 percent disability for PTSD and, unless VA produces affirmative evidence that refutes the claim, then the veteran must be awarded the benefits for 100 percent disability. We cannot agree that this is what Congress intended with section 5107(a). Under the general procedures, even as revised by the VCAA, a claimant must submit a plausible claim for benefits. Once the claimant steps over that rather low hurdle, VA's duty to assist under section 5103A starts. From this point forward, VA has the obligation to assist the veteran in supporting his claim. If zero evidence is produced in support of a material issue, that indicates at least two possibilities. It may be that no evidence exists to support the particular issue, in which case VA can rule against the veteran on that issue. Alternatively, VA may have failed to satisfy its duty to assist, that failure being the cause of the lack of supporting evidence, in which case the claimant can contend that VA should have used further efforts and thus did not comply with its statutory duty to assist. See Wood v. Peake, 520 F.3d 1345, 1348 (Fed. Cir. 2008). Neither possibility directly implicates section 5107(a).

As applied to the facts of this case, it is quite apparent that neither VA nor the Veterans Court misconstrued section 5107(a). Furthermore, Skoczen has not asserted any failure to comply with VA's duty to assist. Accordingly, no reversible error exists in the Veterans Court's decision.

**CONCLUSION**

For the foregoing reasons, the judgment of the Veterans Court is

<u>AFFIRMED</u>