NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VERDELL JACKSON,**
*Claimant-Appellant,*

v.

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7179

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-4295, Judge Ronald M. Holdaway.

---

Decided: June 10, 2013

---

VERDELL JACKSON, of Crosby, Texas, pro se.

MICHELLE R. MILBERG, Trial Attorney, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and SCOTT D. AUSTIN, Assistant Director.

---

Before NEWMAN, CLEVENGER, and WALLACH, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Navy veteran Verdell Jackson appeals a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the denial of her disability claim for hysterectomy caused by severe uterine prolapse. The Board of Veterans Appeals ("Board") found that the appellant's condition was not service connected, and therefore not entitled, and the Veterans Court affirmed. [1] We *affirm* the judgment.

BACKGROUND

The appellant served in the Navy from 1982 to 1998. In 1989, she gave birth to a son while in service. No serious medical complications were discovered in postpartum service medical exams, despite the fact that the baby was born vaginally weighing over 9 pounds, and the labor was undisputedly difficult.

The appellant was honorably discharged on December 31, 1998. Less than one year later, she was diagnosed by a private physician with a "severely retroverted uterus and mild uterine prolapse." Jackson Encl. #3 at 2. The appellant received treatment from 1999 to 2001, and, in May 2001, underwent a total hysterectomy.

In July 2001, the appellant applied to the Department of Veterans Affairs ("VA") for service connected disability in view of her hysterectomy, post-uterine prolapse. The appellant stated that her uterine prolapse was attributable to complications from the childbirth in 1989, citing medical texts which indicated that uterine prolapse can be associated with childbirth.

---

[1] *Jackson v. Shinseki*, No. 10-4295 (Vet. App. Apr. 11, 2012) ("*Vet. Ct. Op.*") *aff'g Jackson v. Shinseki*, No. 3–29 466 (Bd. Vet. App. Oct. 7, 2010) ("*Bd. Op.*").

The Board denied the appellant's claim, relying on three medical opinions stating that although uterine prolapse can be caused by childbirth, the appellant's uterine prolapse was "less than likely" incurred during active duty given her non-diagnosis for 10 years post childbirth. *Bd. Op.* at 9. None of the examiners could state with certainty that the appellant's childbirth was a factor in her post-service uterine prolapse. *Id.* The examiners found that the passage of time with no diagnosis suggested no service connection. *Id.* The Board adopted the opinions of the examiners, and the Veterans Court concluded that the Board's findings were not clearly erroneous. *Vet. Ct. Op.* at 8.

## DISCUSSION

Our review of decisions of the Veterans Court is circumscribed by statute. We review decisions of the court only as to the "validity" or "interpretation" of any statute or regulation, 38 U.S.C. §7292(a), and absent a constitutional issue, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. §7292(d)(2).

The appellant contends that the Veterans Court and Board misinterpreted the service connection statutes and regulations entitling her to a presumption of service connection. Jackson Br. 1–2. ("I was diagnosed within the one year presumptive period"). The appellant also states that the Board misinterpreted the "benefit of the doubt" rule, codified in 38 U.S.C. §5107(b), because there was an approximate balance of positive and negative evidence before the Board, and yet it "never evaluated or addressed" the evidence favorable to the appellant's claim. Jackson Br. 2.

The government contends that no statutory question is raised, and this court cannot review the weight of evidence pertaining to "whether a connection exists between the birth of the appellant's son and uterine prolapse." Gov't Br. 11. The government states that the

benefit of the doubt rule is "inapplicable" because the Board found that there was a preponderance of evidence finding no service connection. *Id.* 12.

In considering these arguments, we are mindful that the appellant represents herself pro se, requiring "a sympathetic reading to the veteran's filings by 'determining all potential claims raised by the evidence, applying all relevant laws and regulations.'" *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (quoting *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001)).

## I.

The appellant's challenge to the VA's application of the "benefit of the doubt" rule is not within the proper scope of our review under the facts presented. Although the appellant submitted lay testimony and excerpts of medical treatises in support of service connection, three medical examiners reviewed the appellant's case and concluded that her uterine prolapse was not incurred in service. The Board found the opinions of the examiners more probative, and concluded that "the preponderance of the evidence is against the Veteran's claim." *Bd. Op.* at 11. Because the Board found preponderance against the appellant, we cannot review that finding. *See Fagan v. Shinseki*, 573 F.3d 1282, 1287 (Fed. Cir. 2009) (benefit of the doubt rule has "no application where the Board determines that the preponderance of the evidence weighs against the veteran's claim.").

The appellant's challenge to the denial of service connection is another matter. We disagree with the government that the appellant has asked this court to reweigh evidence. To the contrary, the appellant's brief states that she is entitled to a *presumption* of service connection based on the *undisputed* fact that the appellant's uterine prolapse was discovered within one year of separation. This argument raises a question within our purview. *See Skoczen v. Shinseki*, 564 F.3d 1319, 1322 (Fed. Cir. 2009) ("In cases where the material facts are not in dispute and the adoption of a particular legal standard would dictate

the outcome of a veteran's claim, we treat the application of law to undisputed fact as a question of law."). The appellant's argument is not facially implausible. *See* 38 U.S.C. §1112(a)(1) (establishing presumption of service connection for "a chronic disease becoming manifest to a degree of 10 percent or more within one year from the date of separation"); 3.307(a)(3) (same)).

## II.

The statutes and regulations pertaining to disability "service connection" can be difficult to decipher. This court recently addressed the scheme at length in *Walker v. Shinseki*, 708 F.3d 1331 (Fed. Cir. 2013).

In general, a veteran's right to disability compensation is established in title 38 of the U.S. Code. The basic entitlement states that the United States will pay veterans for any disability resulting from personal injury "contracted" or "aggravated" while in the active military, so long as the disability is not a result of the veteran's willful misconduct. 38 U.S.C. §1110. The Secretary of Veterans Affairs has promulgated regulations—which the appellant does not challenge—stating that the veteran must establish the entitlement in one of two ways: (1) by "affirmatively showing inception or aggravation during service"; or (2) "through the application of statutory presumptions." 38 C.F.R. §3.303(a). The appellant's arguments pertain to the second approach. Jackson Br. 1–2.

The statutory presumptions of service connection are set forth in 38 U.S.C. §1112, which provides for a presumption for "chronic disease[s] becoming manifest to a degree of 10 percent or more within one year from the date of separation from such service."[2] The Secretary implements this presumption through a triumvirate of regulations, namely 38 C.F.R. §§3.303(b), 3.307(a)(3),

---

[2]  Section 1112 presumptions are expressly made rebuttable under 38 C.F.R. §1113. *See* §1112.

3.309(a). *See Walker*, 708 F.3d at 1338 (finding a "clear linkage" between §3.307(a) and §3.309(a) to §3.303).

Section 3.303(b) states that a presumption of service connection exists for post-service manifestations of "chronic disease" if the chronicity of the disease was "shown as such in service (or within the presumptive period under §3.307)," or, if there is "continuity of symptomatology" after service. The presumptive period for diagnosis of a chronic disease under §3.307 is 1 year from separation from service. The last component is the definition of "chronic disease," which is found in §3.309(a). Section 3.309 enumerates several specific diseases that are eligible "chronic diseases" under the scheme.

Because the appellant states that she was diagnosed "within the one year presumptive period," we interpret the appellant's claim to be that her hysterectomy, post-uterine prolapse, qualifies as a "chronic disease" under §1112 and §3.303(b).[3]

### III.

The term "chronic disease" is statutorily defined in 38 U.S.C. §1101, which identifies several chronic diseases by name and permits the addition of "such other chronic diseases as the Secretary may add . . . ." The statute identifies such diseases as arthritis, diabetes mellitus, and psychosis, among others. The Secretary's list is found in regulation 38 C.F.R. §3.309(a), and is substantially similar.

Hysterectomy and uterine prolapse are not listed in either §1101 or regulation §3.309. The appellant must argue that although these provisions provide lists, the lists are not exhaustive and other diseases may qualify as "chronic." We addressed that very issue in *Walker*.

---

[3] Although the government has failed to address this issue, we see no evidence or argument that the appellant waived it, or is otherwise precluded from raising it now.

In *Walker*, the veteran argued that bilateral hearing loss, although not enumerated in §1101 or §3.309, was medically "chronic" and therefore qualified as a "chronic disease." 708 F.3d at 1336. The Secretary countered that only diseases expressly listed in §3.309(a) are eligible for presumptions under §3.303(b). *Id.* at 1337. After reviewing the statutory scheme at length, we concluded that the Secretary's interpretation was not invalid. *Id.* at 1338. We held that

> Even though §3.303(b) does not contain a specific cross reference to §3.309(a), we think a harmonious reading of §§3.303(b), 3.307(a) and 3.309(a) supports an implicit cross reference to §3.309(a) in § 3.303(b).

> For the reasons explained above, we conclude that properly interpreted, and consistent with the Secretary's interpretation, §3.303(b) is constrained by §3.309(a), regardless of the point in time when a veteran's chronic disease is either shown or noted, in that the regulation is only available to establish service connection for the specific chronic diseases listed in §3.309(a).

708 F.3d at 1338.

The appellant's argument here is precisely the one made and rejected in *Walker.* The one year presumptive period set forth in §3.307(a) does not apply to the appellant's hysterectomy or uterine prolapse because neither of those maladies is a "chronic disease" listed in §3.309. Thus in order to prevail, the uterine prolapse needed to be "contracted" or "aggravated" while in the active military. 38 U.S.C. §1110. The Board's finding to the contrary is beyond our jurisdiction to review.

We have considered the appellant's remaining arguments and find them unpersuasive.

**AFFIRMED**