NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARGARET P. EDMONDSON,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-1591

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-2326, Judge Coral Wong Pietsch.

---

Decided: June 22, 2017

---

BARBARA B. MISTISHEN, Albany, NY, argued for claimant-appellant.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR.; BRIAN D. GRIFFIN, BRANDON A. JONAS,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before NEWMAN, MAYER, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Margaret Edmondson seeks review of the of the October 21, 2015 decision of the Court of Appeals for Veterans Claims ("Veterans Court"), which affirmed the Board of Veterans' Appeals ("the Board") decision denying her late husband's entitlement to service connection for prostate cancer. *Edmondson v. McDonald*, No. 15-2326, 2015 WL 6161854 (Vet. App. Oct. 21, 2015). For the following reasons, we *affirm* the decision of the Veterans Court.

BACKGROUND

Mr. Edmondson served on active duty in the United States Army from August 1960 to August 1963, including service in Laos from October 1961 to August 1962. *Edmondson*, 2015 WL 6161854, at *1. He was diagnosed with prostate cancer in 2009. *Id.* On December 23, 2011, Mr. Edmondson filed for service-connected disability for prostate cancer "due to exposure to Agent Orange while [in] service in Laos." *Id.* On September 5, 2012, the Regional Office denied his claim, stating in relevant part: "Your service personnel records show you were in Laos. There is no evidence showing you were in Vietnam or that you were exposed to Agent Orange, therefore, service connection is denied based on presumption." J.A. 35.

On January 23, 2013, Mr. Edmondson appealed the Regional Office's decision to the Board. He argued that the United States began spraying Agent Orange in Laos in 1961 and attached a January 2013 internet article as supporting evidence. *Edmondson*, 2015 WL 6161854, at *1. On June 5, 2015, the Board likewise denied Mr. Edmondson's entitlement to service connection. Specifi-

cally, the Board determined that: (1) there was no evidence that he had served in a location, such as Vietnam, that would entitle him to a statutory or regulatory presumption of exposure to herbicides (e.g., 38 U.S.C. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii)); and (2) he had provided no evidence of personal exposure, beyond general assertions that herbicides were sprayed in Laos. *Id.* at *2. The Board acknowledged that the public record establishes Agent Orange was sprayed in Laos, taking judicial notice of an article published in the *Air University Review*, but only beginning in 1965—several years after Mr. Edmondson's service there. The Board held, accordingly, that he had failed to demonstrate a nexus between his medical diagnosis and military service.

On June 15, 2015, Mr. Edmondson appealed the Board's decision to the Veterans Court, which affirmed the Board on October 21, 2015. *Id.* at *1. On appeal, Mr. Edmondson argued that the Board: (1) violated his due process rights by not affording him a presumption of exposure; (2) failed to make a determination as to whether he engaged in combat; and (3) did not adequately explain its determination that herbicides were not sprayed in Laos during his service. *Id.* at *2. Regarding due process in particular, Mr. Edmondson asserted that "the Board has placed an impossible and fundamentally unfair evidentiary burden on him" because "any evidence of the covert military operations that took place in Laos in 1961 and 1962 would be within the control of the United States Government, if they exist at all." *Id.* at *4. The Veterans Court rejected this argument, observing that:

> [Mr. Edmondson] fails, in his principal brief, to cite any evidentiary support for his assertion, which is a factual predicate to his constitutional argument, that any additional evidence of military operations in Laos during his period of service there would be within the control of the U.S. government and thus impossible for him to obtain.

> The appellant's bare assertion that the United States was involved in a secret war in Laos is insufficient to establish that it was impossible for him to obtain evidence regarding relevant U.S. operations there. He cited no evidence to this effect in his principal brief, including any evidence that he made failed attempts to obtain such information through the Freedom of Information Act or otherwise.

*Id.* at *4. The Veterans Court additionally rejected Mr. Edmondson's other arguments, for reasons not relevant to the instant appeal. *Id.* at *5–8.

On November 22, 2015, Mr. Edmondson died from prostate cancer. Mrs. Edmondson subsequently filed a motion for substitution, which the Veterans Court granted on January 20, 2016. Mrs. Edmondson timely appeals the Veterans Court's October 21, 2015 decision to this court.

## STANDARD OF REVIEW

Our ability to review a decision of the Veterans Court is limited. We may review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision." 38 U.S.C. § 7292(a) (2012). We have exclusive jurisdiction "to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under [38 U.S.C. § 7292], and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." *Id.* § 7292(c). Except to the extent that an appeal presents a constitutional issue, however, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2).

DISCUSSION

Sections 1110 and 1131 of Title 38 of the United States Code provide "compensation" to veterans for personal injury or disease incurred "in line of duty." 38 U.S.C. §§ 1110, 1131. Generally, to establish this connection to service, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." *Holton v. Shinseki*, 557 F.3d 1362, 1366 (Fed. Cir 2009) (quoting *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004)); *see also* 38 U.S.C. § 101(16).

The requirements of this three-part test are obviated in certain circumstances by regulations from the Department of Veterans Affairs and superseding statutory provisions. Of particular relevance to this appeal, prostate cancer is presumed to be service connected if: (1) the veteran was exposed in service to certain herbicides; and (2) the condition becomes manifest to a degree of 10% or more at any time after service. 38 C.F.R. 3.309(e); 66 Fed. Reg. 23,166 (May 8, 2001). Veterans who served on active duty in Vietnam between January 9, 1962 and May 7, 1975 are presumed to have been so exposed. 38 U.S.C. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii).

Absent the Vietnam presumption, a veteran may still demonstrate *actual* exposure to herbicides to qualify for the service connection presumption. 38 C.F.R. §§ 3.307(a)(6), 3.309(e). But in demonstrating actual exposure, as with other factual predicates to establishing service connection, the burden of producing evidence is on the veteran. 38 U.S.C. § 5107(a) ("[A] claimant has the responsibility to present and support a claim for benefits . . . ."); *Fagan v. Shinseki*, 573 F.3d 1282, 1287 (Fed. Cir. 2009) ("It is the veteran's 'general evidentiary burden' to establish all elements of his claim . . . ."). A veteran is

given the "benefit of the doubt" on an "issue material to the determination of a matter" only "[w]hen there is an approximate balance of positive and negative evidence." 38 U.S.C. § 5107(b); *see also Skoczen v. Shinseki*, 564 F.3d 1319, 1324 (Fed. Cir. 2009) (describing § 5107(b) as setting forth an "equality of the evidence" standard as to persuasive weight).

The government's briefing on appeal suggests that Mrs. Edmondson raises equal protection and facial due process challenges. *See, e.g.*, Appellee Br. 13. Counsel for Mrs. Edmondson, however, clarified unambiguously at oral argument that the only issue raised on appeal is an as-applied procedural due process challenge to the regulatory obligation to establish proof of exposure. *See, e.g.*, Oral Argument at 00:34–00:37, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 16-1591.mp3 (describing the case as "a constitutional question, specifically procedural due process"); *id.* at 00:55–01:00 (responding in the affirmative to the question: "So is there no equal protection claim on the table?").

Specifically, Mrs. Edmondson argues that the obligation to show actual exposure under § 3.307(a)(6), as applied in this case, "denied [Mr. Edmondson] a fair opportunity for a hearing" because he was "on a covert mission," and hence "evidence might not have been kept or the government might be reluctant to release it for security reasons." Appellant's Br. 11; *see also* Oral Argument at 2:30–2:50 (denying making a facial challenge to either § 1116(f) or 38 C.F.R. § 3.307(a)(6), and instead claiming to be "challenging . . . the way [the regulation requiring proof of exposure] is applied"); *id.* at 3:32–3:48 (responding in the affirmative to the question: "You're just saying that he shouldn't have to have this separate burden because it is an impossible burden to satisfy, is that [correct]?"). Thus, Mrs. Edmondson is not attacking 38 U.S.C. § 1116(f) or any congressional line-drawing in connection with that statute. Instead, she is contending

that, by not applying a presumption in his case *similar to* that in § 1116(f), the Board has denied him procedural due process.[1]

Turning to the procedural due process argument Mrs. Edmondson does make, we agree with the Veterans Court that it depends fundamentally on the assumption that evidence supporting exposure—if it exists—could not be obtained from the government after reasonable effort. If that evidence could have, in fact, been obtained, then Mrs. Edmondson does not otherwise suggest a lack of notice, opportunity to be heard, or any other deficiency relevant to Fifth Amendment concerns. *See, e.g.*, *Edwards v. Shinseki*, 582 F.3d 1351, 1355 (Fed. Cir. 2009) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976)).

Based on the record now before us, however, it would appear that at no point in the pendency of this case did the Edmondsons actually attempt to obtain evidence relating to their claim. Below, for example, the Veterans Court noted the absence of a Freedom of Information Act request or other documented inquiry, and Mrs. Edmondson does not challenge that finding on appeal. Indeed, the

---

[1] The government's brief discusses procedural and jurisdictional issues relating to the assertion of equal protection or facial challenges to § 1116(f). Specifically, it addresses whether the Veterans Court has jurisdiction to address facial challenges to a statute and whether Mrs. Edmondson did or could waive the assertion of such challenges. And, the government addresses the merits of those arguments to the extent preserved or permissible in this appeal. Given the clarifications regarding the scope of Mrs. Edmondson's claims provided at oral argument, we need not address these interesting questions.

only record evidence available is a single internet article, submitted by Mr. Edmondson to the Board, stating generally that herbicides were sprayed in Laos. But that article does not indicate that spraying in Laos occurred during Mr. Edmondson's service there, much less that the existence of covert operations created obstacles to obtain evidence from the government regarding any such spraying. As a result, we are left with bare assertions and nothing more: the relevant evidence "might" not have been kept or "might" not be released for security reasons, and spraying of Agent Orange "might" have occurred earlier than documented as part of a covert war in Laos.

Accordingly, we need not address whether, had the Edmondsons actually tried and failed to substantiate exposure due to governmental intransigence or impossibility, a due process violation would have occurred. Our decision instead relies on the straightforward and well-established principle that purely hypothetical obstacles are not sufficient to sustain due process claims. *See, e.g.*, *Dusenbery v. United States*, 534 U.S. 161, 170–71 (2002) ("[T]he criterion is not the possibility of conceivable injury . . . .") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)); *United States v. Marion*, 404 U.S. 307, 325–26 (1971) ("Appellees rely solely on the . . . possibility of prejudice . . . . Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.").

CONCLUSION

Although we are grateful for Mr. Edmondson's honorable service to the country, after full review of the record and careful consideration, we must affirm.

**AFFIRMED**