﻿Citation Nr: AXXXXXXXX
Decision Date: 06/25/19 Archive Date: 06/24/19

DOCKET NO. 181011-676
DATE: June 25, 2019

ORDER

New and relevant evidence has been received to reopen a claim for entitlement to service connection for Parkinson’s Disease, and to that extent only, the appeal is granted.

Entitlement to service connection for Parkinson's Disease is denied. 

FINDINGS OF FACT

1. A July 2013 rating decision denied service connection for Parkinson’s disease. The Veteran did not perfect the appeal of that rating decision. 

2. New evidence was received after the July 2013 denial that is relevant to the issue of entitlement to service connection for Parkinson’s disease.

3. The Veteran has not demonstrated actual exposure to an herbicide agent during his service, to include in the Republic of Korea.

4. The preponderance of the evidence is against finding that Parkinson’s Disease began during active service or is otherwise related to an in-service event.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for entitlement to service connection for Parkinson’s Disease have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017).

2. The criteria for service connection for Parkinson’s Disease are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program. 

The Veteran served on active duty from June 1972 to June 1974. The Veteran selected the Direct Claim lane when he submitted the RAMP election form. Accordingly, the June 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed that RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The new and material evidence issue regarding Parkinson’s disease has been recharacterized to indicate the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109.

1. Whether new and relevant evidence has been received to reopen a claim for entitlement to service connection for Parkinson’s Disease

The Veteran contends that he submitted new evidence to reopen a claim for service connection for Parkinson’s disease that is new and relevant and warrants readjudication of the issue.

VA will readjudicate a claim if new and relevant evidenced is presented or secured. AMA, Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. AMA, Pub. L. No. 115-55, § 101(35), 131 Stat. 1105, 1105.

The question in this case is whether the Veteran submitted evidence after the prior final denial of his claim for service connection for Parkinson’s disease in the legacy system, and if so, whether that evidence is new and relevant to his claim.

The Board finds the Veteran submitted new evidence after the prior final rating decision in the legacy system that is relevant to his claim. The Veteran submitted three medical nexus opinions, in May 2017, September 2017, and December 2017, which was after the July 2013 prior final rating decision. Those opinions were not already of record and may prove or disprove the nexus element of the claim for service connection for Parkinson’ s disease. Accordingly, readjudication of the claim is warranted.

2. Service connection for Parkinson’s Disease 

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. To establish a service connection for a disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

VA regulations provide that if a veteran was exposed to herbicide agents during active service, the following diseases shall be service connected if the requirements of 38 C.F.R. § 3.307(a) are met, even if there is no record of such disease during service: AL amyloidosis, chloracne or other acneform disease consistent with chloracne; type 2 diabetes (also known as Type II diabetes mellitus); Hodgkin’s disease; chronic lymphocytic leukemia (CLL); multiple myeloma; Non-Hodgkin’s lymphoma; acute and subacute peripheral neuropathy; porphyria cutanea tarda; prostate cancer; respiratory cancers (cancer of the lung, bronchus, larynx or trachea); soft tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi’s sarcoma, or mesothelioma), chronic B-cell leukemias, Parkinson’s disease, and ischemic heart disease. 38 C.F.R. § 3.309 (e).

The term herbicide agent means a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, specifically: 2,4-D, 2,4,5-T and its contaminant TCDD; cacodylic acid; and picloram. 38 C.F.R. § 3.307 (a)(6)(i). 

A Veteran who served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, shall be presumed to have been exposed during that service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any herbicide agent during that service. 38 C.F.R. § 3.307. 

The AOJ found that the Veteran has a current diagnosis for Parkinson’s disease. The Veteran contends Parkinson’s disease is related to service in the demilitarized zone (DMZ) in Korea.

The Veteran’s service personnel records show that the Veteran served in Korea. He was stationed with A Battery, 1/15 FA 2nd Infantry Division and the HHB 1/15 FA 2nd Infantry Division, and he served as a cannoneer. The Veteran has stated that he served for three weeks in the DMZ, and while there, he ate, slept, and worked in trenches and underground bunkers. He has provided pictures of himself in trenches and bunkers, and he has submitted pictures of guard stations that he says were in the DMZ. He has also submitted Leave and Earnings Statements showing that for the months of June and July 1973, he received Hostile Pay. In light of that evidence, the Board finds that it is at least as likely as not that the Veteran spent time in the DMZ while he served in Korea.

However, the Veteran’s service records show the Veteran was in Korea from November 23, 1972, to December 12, 1972, which was after the presumptive period. The Veteran acknowledges that his service was after the presumptive period, but he asserts that herbicide agents were still present because the environment was free of vegetation. In support of the contention that he was actually exposed to an herbicide agent after the presumptive period, the Veteran has submitted an excerpt from “Hazards of Dioxin, publication #01-04-010.” He has also submitted letters from D.A., M.D., and M.S.S., M.D. Both of the private physicians concluded that the Veteran was actually exposed to an herbicide agent while serving at the DMZ, and both physicians included the excerpt from “Hazards of Dioxin” to support the opinions.

In reviewing the excerpt from “Hazards of Dioxin” provided by the Veteran, the Board observes that although there is an indication of an estimate of the half-life of TCDD being 9 to 15 years on the soil and 25 to 100 years subsurface, there is no explanation of the basis for those findings, no reference to the conditions, soil, or chemicals used in Korea in the relevant time frame, or any other contextual information to support a conclusion that the Veteran was exposed to herbicides during his time in Korea. The excerpt from “Hazards of Dioxin” does not provide the information needed for a finding that the Veteran was actually exposed to an herbicide agent during his active service. Notably, both Dr. A. and Dr. S. relied on the excerpt to support their opinions that the Veteran was exposed to herbicide agents. However, as the excerpt does not provide the information needed for a finding that the Veteran was actually exposed to herbicide agents, the opinions from Dr. A. and Dr. S. do not establish that the Veteran was actually exposed to an herbicide agent while on active duty.

The Board has considered a May 2017 VA treatment record in which the treatment provider stated that the Veteran had material exposure to Agent Orange in Korea by history. The treatment provider said that considering that exposure, it was his opinion that the Veteran’s Parkinson’s disease was related to, and likely due to, exposure to Agent Orange during service in Korea. However, the examiner who created that record concluded that the Veteran was exposed to herbicide agents while on active duty based simply on the Veteran’s self-reported history, and a medical evaluation that is merely a recitation of a Veteran’s self-reported and unsubstantiated history has no probative value. Sanchez-Benitez v. West, 13 Vet. App. 282 (1999); Swann v. Brown, 5 Vet. App. 229 (1993); Godfrey v. Brown, 8 Vet. App. 113 (1995). 

The Veteran and Dr. A. also cited another Board decision in which another Veteran was found to have actual exposure to herbicide agents while serving on active duty in Korea. The Board notes that Board decisions are nonprecedential in nature and that each case presented to the Board will be decided on the basis of the individual facts of the case. 38 C.F.R. § 20.1303. Therefore, just because the Board has in prior decisions found actual exposure to herbicide agents in Korea outside of a presumptive period, the Board is not required to reach a similar result in this case.

Next, the Veteran has asserted that he was actually exposed to herbicides when returning from leave in 1973. He stated that he had a one day and night layover at Kadena Air Base in Japan. He stated that Okinawa City was originally part of Kadena Air Base, and in 2013, approximately 100 rusty barrels of Agent Orange were unearthed. In a June 2017 statement, the Veteran’s spouse stated that the Veteran was exposed to Agent Orange in January 1974 when he was returning from leave and was laid over at Osan Air Force Base in Japan. She stated that Agent Orange was stored at that base. As to the Veteran’s and spouse’s assertions that the Veteran was exposed to herbicides during layovers at Kadena Air Base and Osan Air Force Base, the Board finds that does not demonstrate any actual exposure to herbicides. Even if herbicide agents were actually stored at Kadena and Osan, that does not demonstrate actual exposure to herbicide agents. At no point does the Veteran or his spouse allege that he came in contact with the barrels that were being stored there, or that herbicide agents were sprayed or used at those particular facilities. Finally, the Board notes that unless one of the barrels was broken or otherwise unsealed, merely being next to a barrel of Agent Orange would not constitute exposure to herbicide agents. In short, the Veteran has not provided any evidence aside from his and his spouse’s lay assertions of a belief that he was exposed to Agent Orange or other herbicide agents as a result of layovers at Kadena Air Base and Osan Air Force Base. Therefore, the Board cannot find that evidence to be competent or credible evidence of exposure. Even if the Board were to find that evidence to be both competent and credible, that evidence is not probative of actualized exposure to herbicide agents as mere storage, rather than use of any herbicide agents, would not result in exposure in the circumstances described by the Veteran and spouse.

The Veteran has asserted that his Parkinson’s disease must have been caused actual exposure to herbicide agents, as he has no other explanation regarding its etiology. However, VA is not obligated to grant a claim for benefits simply because there is no evidence disproving it. A claimant has the responsibility to present and support a claim for benefits. The claimant, with VA assistance, must provide an evidentiary basis for the claim that rises to the level of an approximate balance of positive and negative evidence, in order for the claim to be allowed. 38 U.S.C. § 5107(a); Skoczen v. Shinseki, 564 F.3d 1319 (2009); Fagan v. Shinseki, 573 F.3d 1282 (2009). Such evidence has not been provided in this case.

No other information or evidence has been submitted into the record to suggest a basis for actual exposure to herbicides.

A Personnel Information Exchange System (PIES) request response received in October 2012 indicated there is no record of the Veteran being exposed to herbicide agents in service. In a July 2013 memorandum, the Agency of Original Jurisdiction determined the information described by the Veteran was insufficient to send to the United States Army and Joint Services Records Research Center (JSSRC) to conduct further research to confirm in-service exposure to herbicide agents. The Veteran is not entitled to a presumption of exposure to herbicide agents in service. The Board finds that the evidence also does not confirm actual exposure to herbicide agents during service, to include in Korea. The Board has considered the Veteran’s supporting statements, but he has not demonstrated that he is an expert in identifying Agent Orange or herbicide agents, or that he otherwise has a sound basis for knowing that he was exposed to it. The Board finds that the Veteran is not competent to assert that he had direct exposure to herbicide agents in service, to include by performing duties in trenches and digging through dirt. Because the Veteran has been found to not have been exposed to herbicide agents during service, service connection for Parkinson’s disease due to exposure to herbicide agents is not warranted. 38 U.S.C. § 1116; 38 C.F.R. § 3.309(e).

The Veteran has specifically limited his appeal to service connection due to herbicide agent exposure. However, the Board notes, incidentally, that evidence of record also does not otherwise support the claim. The Veteran’s service medical records are negative for diagnoses or signs of Parkinson’s disease. The evidence does not show, and the Veteran has not claimed, a continuity of symptoms of Parkinson’s disease from the Veteran’s active service through the present. There is no competent medical opinion linking current Parkinson’s disease to service, or showing manifestation within a presumptive period following service. The Veteran, as a lay person, is not competent diagnose Parkinson’s disease or determine its etiology as this is not a simple medical condition. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

Accordingly, the Board finds that service connection for Parkinson’s disease is not warranted. As the preponderance of the evidence is against the claim, the claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

 

Harvey P. Roberts

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. Kass, Associate Counsel